Pamela HARRIS, and Rhonda Green, in-
dividually and on behalf of all others
similarly situated, Plaintiffs,

v.

GENERAL DEVELOPMENT CORPO-
RATION, Gina Battaglia, and Irv
Hirshman,[1] Defendants.

No. 88 C 9736.

United States District Court,
N.D. Illinois, E.D.

Oct. 25, 1989.

1. Plaintiffs have misspelled defendant Hersch-man's name in the caption.  Although he is referred to as Herschman in the opinion, the caption will remain the same until the complaint is amended.

Jeffrey L. Taren, Kinoy, Taren, Geraghty & Potter, P.C., Chicago, Ill., for plaintiffs.

James W. Gladden, Jr., James D. Holzhauer, David B. Ritter, Mayer, Brown & Platt, Chicago, Ill., for defendants.

## MEMORANDUM ORDER

BUA, District Judge.

This civil rights action arises from the alleged discriminatory hiring policy implemented by defendants. Plaintiffs desire to bring this lawsuit as a class action, and have moved to certify a class of persons denied employment on account of race. Plaintiffs also have moved to strike an interrogatory answer amended by defendants, characterizing it as nothing more than an "eleventh hour" change of legal strategy to defeat certification. For the reasons stated herein, plaintiffs' motion for class certification is granted in part and denied in part. In addition, this court denies plaintiffs' motion to strike.

## FACTS

With offices located throughout the United States, defendant General Development Corporation ("GDC") employs a large number of sales personnel to sell undeveloped, vacant land in pre-planned Florida communities. The sales personnel are employed almost exclusively on a commission basis. Although GDC has enjoyed nationwide success, it has not been totally satisfied with the performance of its Chicago area operations. Consequently, GDC sent its vice president, Vince Rubeo, to the Chicago office to redirect its marketing strategy. Rubeo had previously been a Branch and Regional Manager, responsible for rebuilding GDC's lagging operations in Ohio.

After Rubeo arrived in Chicago, he implemented the so-called "sphere of influence" marketing strategy. The first step in carrying out this plan is to define the various markets that exist within the locale. The markets typically are defined along ethnic lines. Next, advertisements are placed in local newspapers to recruit sales personnel from those markets—GDC's ads often stated that no experience or real estate license was needed, and that the sales position did not require any particular level of education. The hirees are then trained to sell in the marketplace from which they were recruited. Thus, the sphere of influence technique works on the assumption that sales personnel are most successful when selling to people from within their own community.

Plaintiffs claim that when Rubeo took over at the beginning of 1987, he focused on several markets within Chicago—namely, the Black, Chinese, Indian, Korean, Philippino, Polish, Ukranian, and Vietnamese communities. Because GDC was not satisfied with its sales efforts in the black community, Rubeo allegedly directed his managers and sales employees not to recruit or hire any more blacks. According to plaintiffs, two of Rubeo's senior marketing managers, defendants Gina Battaglia and Irv Herschman, were especially instrumental in carrying out Rubeo's directive.

Plaintiffs contend that defendants' sphere of influence strategy conditioned employment solely on the basis of race or national origin, in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Complaining of the numerous black applicants and potential applicants allegedly denied employment on account of race, plaintiffs seek to certify the following class:

All black persons who applied for full time or part-time sales jobs with GENERAL DEVELOPMENT CORPORATION at its Chicago offices between January 1, 1987 and the present and all black persons who were discouraged or excluded from applying for full time or part-time sales jobs at GENERAL DEVELOPMENT CORPORATION during that period as a result of defendants' job

recruiting, marketing or advertising policies.

Plaintiffs demand declaratory and injunctive relief to eliminate the alleged discriminatory employment practices, compensation for lost commissions and wages, and punitive damages.

The representative parties of the proposed class, Rhonda Green and Pamela Harris, were both denied employment by GDC. Green apparently worked for GDC for approximately two weeks, however, before she was told by her supervisor that she had never been hired. Subsequently, Green filed a charge of discrimination with the Equal Employment Opportunity Commission. Nonetheless, in an interrogatory propounded by plaintiffs, defendants stated that Green had never worked for GDC. As discovery proceeded and several depositions were taken, defendants realized that she had been working for two weeks, and they amended the interrogatory answer accordingly. Plaintiffs claim that because they relied on defendants' initial statement that Green was never hired, that they would be prejudiced by the amendment. Attributing great significance to this issue, plaintiffs have moved to strike the amended answer. Consequently, before proceeding to plaintiffs' motion for class certification, the court must consider plaintiffs' motion to strike.

## DISCUSSION

### I. *Motion to Strike*

■ Defendants contend that they did not know that Green had done any work for them until they took the depositions of Green and several other employees. There were no records at GDC's corporate headquarters indicating that Green had ever been hired or employed by GDC. Once defendants realized that they had responded incorrectly to plaintiffs' interrogatory, they amended their answer to indicate that Green had been hired by GDC. Rule 26(e) of the Federal Rules of Civil Procedure provides that a party is under a duty to amend an interrogatory answer "if he obtains information upon the basis of which ... he knows that the response was incorrect when made." Fed.R.Civ.P. 26(e)(2)(A). Despite defendants' duty to amend, plaintiffs claim that they relied on defendants' position that Green was never hired, and that they would be prejudiced if defendants were now allowed to amend. But plaintiffs had access to the facts regarding Green's employment situation at all times. Thus, defendants' amendment did not serve to unduly prejudice or surprise its adversary. In light of the fact that discovery is not yet completed in this case, this court sees no reason to deny defendants' amendment.

### II. *Motion for Class Certification*

For the purpose of ruling on plaintiffs' motion for class certification, plaintiffs' allegations are taken as true and the court may not make an inquiry into the merits of the lawsuit. *Allen v. Isaac*, 99 F.R.D. 45, 49 (N.D.Ill.1983) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)). The burden is on plaintiffs, however, to establish their entitlement to a class under federal rule 23. *Long v. Thornton Township High School Dist. 205*, 82 F.R.D. 186, 189 (N.D.Ill.1979). Nevertheless, this court is vested with wide discretion in deciding whether to certify the class. *Patterson v. General Motors Corp.*, 631 F.2d 476, 480 (7th Cir.1980), *cert. denied*, 451 U.S. 914, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981).

### A. Class Definition

As an initial matter, the court must determine whether the members of the proposed class are capable of being suitably identified. Although there is no explicit requirement in rule 23, courts have held that the class must be adequately defined and clearly ascertainable before a class action can proceed. *See, e.g., Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir.1977); *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir.1970) (per curiam). It is critical that the class represented is ascertainable since the outcome of the class action is res judicata as to all unnamed class members. *Alliance to End Repression*, 565 F.2d at 977 n. 6. Of course, whether or not the class is ade-

quately defined is essentially a fact-based question, requiring a case-by-case determination. *Id.* at 977.

■ In the instant case, defendants object to the certification of a class consisting of potential applicants who were deterred from applying at GDC.[2] Defendants contend that these potential claimants are not clearly ascertainable because determining whether a person was deterred from seeking employment requires an inquiry into that individual's state of mind. When class membership depends on an individual's state of mind, courts have typically found the class to be too indefinite. *See, e.g., DeBremaecker,* 433 F.2d at 734 (class consisting of all state residents active in the "peace movement" who were harassed and intimidated in the exercise of their first amendment rights is not clearly ascertainable); *Chaffee v. Johnson,* 229 F.Supp. 445, 448 (S.D.Miss.1964), *aff'd,* 352 F.2d 514 (5th Cir.1965) (per curiam), *cert. denied,* 384 U.S. 956, 86 S.Ct. 1582, 16 L.Ed.2d 553 (1966) (class consisting of all persons who work for the end of discrimination and segregation in Mississippi and for the exercise and preservation of civil rights generally is too vague and indefinite); *see also Vietnam Veterans Against the War v. Benecke,* 63 F.R.D. 675, 679–80 (W.D.Mo. 1974); *Eisman v. Pan Am. World Airlines,* 336 F.Supp. 543, 547 (E.D.Pa.1971). Although the presence of "state of mind" issues does not require automatic denial of class certification, *Simer v. Rios,* 661 F.2d 655, 670 n. 25 (7th Cir.1981), *cert. denied,* 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982), it is a factor to be given serious consideration. After all, the express requirements of rule 23 must be applied to an identifiable group of claimants, and not to an abstract or nebulous class.

The proposed class of persons who allegedly were discouraged from applying at GDC is too imprecise and speculative to be certified. *See Washington v. Walker,* 75 F.R.D. 650, 653 (S.D.Ill.1977) (class including all black males who were deterred from applying for entry level positions as state police troopers because of defendant's discriminatory practices is too indefinite); *Quigley v. Braniff Airways, Inc.,* 85 F.R.D. 74, 84 (N.D.Tex.1979) (class of blacks deterred from applying for flight attendant positions due to defendant's discriminatory hiring and recruiting practices is too vague and amorphous). An attempt to identify those persons who were subjectively deterred would be a daunting and seemingly fruitless task, requiring an individual adjudication with respect to each potential class member. *Cf. International Bhd. of Teamsters v. United States,* 431 U.S. 324, 368–69 n. 52, 97 S.Ct. 1843, 1871–72 n. 52, 52 L.Ed.2d 396 (1977). In certain cases, this task may not be so unwieldy, and class identification would be entirely feasible. For example, a class comprised of current employees who were "chilled" from applying for a promotion, *see Rosario v. Cook County,* 101 F.R.D. 659 (N.D.Ill. 1983), is relatively limited, readily identifiable, and capable of more accurate verification. In contrast to that situation, plaintiffs' class of deterred applicants encompasses the entire available black labor force in the City of Chicago and its contiguous suburbs. In attempting to cull the truly deterred applicants from such an expansive universe, a tremendous amount of valuable court time and resources would be consumed, placing a severe burden on the court and litigants. *See Simer,* 661 F.2d at 669.

While the class of deterred nonapplicants is too speculative to be certified as a class, it is certainly within this court's discretion to limit or redefine the scope of the class. *Washington,* 75 F.R.D. at 652; *Meyer v. Citizens and S. Nat'l Bank,* 106 F.R.D. 356, 360 (M.D.Ga.1985); *Metcalf v. Edelman,* 64 F.R.D. 407, 409 (N.D.Ill.1974). Defendants admit that the class of applicants who were actually denied employment at GDC is well-defined. Thus, by striking the deterred members from the

---

2. On July 24, 1989, this court entered an order allowing plaintiffs to amend their complaint; the amendment expanded the proposed class to include all blacks who were discouraged from applying at GDC. Defendants did not raise any objection to the class definition at that time and, consequently, the issue was not considered by the court.

class definition, a sufficiently identifiable class is created: All black persons who applied for full- or part-time sales jobs with GENERAL DEVELOPMENT CORPORATION at its Chicago office between January 1, 1987 and the present and who were denied employment on account of race. This modified class is definite and precise enough to now be tested against the express requirements of rule 23.

## B. The Rule 23 Prerequisites

To maintain a class action, plaintiffs must satisfy four requirements:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). Additionally, plaintiffs must show that defendants have "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). However, because this is a civil rights case, these requirements are to be construed liberally. *Long*, 82 F.R.D. at 189.

### 1. *Numerosity*

Under rule 23, the proposed class must be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). When it is difficult to determine the precise number of members in the class, the plaintiff need not allege an exact figure; a good faith estimate is sufficient. *Long*, 82 F.R.D. at 189; *EEOC v. Printing Indus.*, 92 F.R.D. 51, 53 (D.D.C.1981).

■ Plaintiffs acknowledge that the total number of black applicants denied employment on account of race is unknown because defendants did not maintain the records of rejected applicants. Nevertheless, plaintiffs allege that at least 35 black applicants were rejected in the span of one month, and that this pattern of discrimination was pervasive since 1987. Citing statistics indicating the gross disparity between the number of black employees on GDC's workforce relative to the available labor pool, plaintiffs claim that defendants' hiring practices evidence broad class discrimination. Insofar as plaintiffs allege extensive class-based discrimination, the failure to allege an exact number of class members assumes less significance. *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir.1983). An employment discrimination suit "is necessarily a class action as the evil sought to be ended is discrimination on the basis of a class characteristic." *Bowe v. Colgate–Palmolive Co.*, 416 F.2d 711, 719 (7th Cir.1969). Therefore, the numerosity prerequisite should not be mechanically employed to defeat class certification. *Jones v. Diamond*, 519 F.2d 1090, 1100 (5th Cir.1975) (numerosity requirement should be construed liberally in civil rights actions seeking, *inter alia*, injunctive relief).

By alleging that at least 35 individuals were discriminated against in one month, and that this pattern persisted for two years, plaintiffs have satisfied the numerosity requirement. Joinder of the potential class members would be impracticable. *See Printing Indus.*, 92 F.R.D. at 53 ("as few as 25–30 class members should raise a presumption that joinder would be impracticable, and thus the class should be certified"); *Phillips v. Joint Legislative Comm.*, 637 F.2d 1014, 1022 (5th Cir.1981), *cert. denied*, 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 483 (1982) (numerosity requirement was clearly met by the combination of at least 33 identifiable members with countless unidentified members); *cf.* 1 Newberg on Class Actions § 3.05, at 142 (2d ed. 1985) ("the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large ... should meet the test of Rule 23(a)(1) on that fact alone"). Besides the difficulty and delay inherent in requiring the 35 known applicants to intervene, join, or file a separate suit, the interests of the un-

known applicants who were victims of discrimination also need to be considered. *Rosario*, 101 F.R.D. at 662. Unfortunately for defendants, "joinder of unknown individuals is certainly impracticable." *Jack v. American Linen Supply Co.*, 498 F.2d 122, 124 (5th Cir.1974). A class suit would better serve the interests of both the plaintiffs and the defendants; the needless relitigation of common issues and resulting consumption of the parties' time and resources would be avoided. *Rosario*, 101 F.R.D. at 662.

### 2. *Commonality*

■ Before plaintiffs can bring a class action, there must be "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). Plaintiffs' position that the alleged discriminatory hiring policy abounds with questions of fact and law common to the class is unchallenged by defendants. As to the common questions of fact, plaintiffs allege that all black applicants were subject to the same racially-motivated hiring and recruiting policy, which resulted in the rejection of each class member's application. Likewise, whether this policy ran afoul of section 1981 and Title VII is a question of law, common to all of the class members. *See Rosario*, 101 F.R.D. at 662. "Where a question of law refers to a standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement of Rule 23(a)(2) is usually met." *Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D.Ill.1984). All questions of law or fact need not be common among the class members; a single issue common to all the members is adequate to meet the commonality requirement. Newberg, *supra*, § 3.10, at 154. Defendants allegedly discriminatory conduct affected all members of the class in a similar fashion. As a consequence, most if not all of the elements of the resulting cause of action will be common to the class.

### 3. *Typicality*

■ The class representatives, Rhonda Green and Pamela Harris, cannot bring a class action unless their claims or defenses are typical of the claims or defenses of the class itself. Fed.R.Civ.P. 23(a)(3). Generally, this requirement is satisfied if the claims of the representative parties "arise[ ] from the same event or practice or course of conduct that gives rise to the claims of the other class members, and if [the] claims are based on the same legal theory." Newberg, *supra*, § 3.13, at 167.

Undeniably, Harris' claims are typical of the class. Harris applied for a job at GDC, and allegedly was denied employment solely because she is black. The civil rights claims asserted by Harris and the class she seeks to represent stem from the same conduct of defendants and are based on the same legal theories.

While defendants concede that Harris' claims are typical of the class, they argue that Green's claims are not. But Green's status differs from that of Harris in only one respect: Green apparently worked for GDC for two weeks before it was announced that she had never been hired. Rather than an initial denial of employment, GDC allegedly allowed her to begin work before defendants "lost the paperwork" which indicated that she was hired. The existence of this factual variation, however, does not preclude class certification since Green and the members of the class were affected by the same course of conduct. *Franklin*, 102 F.R.D. at 950; *Hochschuler v. G.D. Searle & Co.*, 82 F.R.D. 339, 344 (N.D.Ill.1978); Newberg, *supra*, § 3.13, at 167. "The typicality requirement refers to the nature of the representative's claim or defense and not to the specific facts from which it arose...." *Long*, 82 F.R.D. at 190.

All class members are allegedly victims of the same discriminatory hiring scheme. The claims asserted by Green and the class rest on the same legal theories—Title VII and section 1981—and will stand or fall on the same evidence. Because Green's interests are completely coextensive with the interests of the class, she has satisfied the typicality requirement.

### 4. *Adequacy of Representation*

Before Green and Harris will be allowed to represent the class, they must demonstrate that they "will fairly and adequately protect the interests of the class." Fed.R. Civ.P. 23(a)(4). This requirement consists of two factors: 1) counsel for plaintiffs must be competent, experienced, and capable of conducting the class action; and 2) plaintiffs' interests must not conflict with those of the class. *Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 90 (7th Cir.1977); *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975).

### *Competence of Counsel*

■ Defendants do not dispute the ability of plaintiffs' counsel to adequately conduct the proposed litigation. The attorneys selected by plaintiffs have considerable experience in federal class action litigation, including civil rights and employment discrimination actions. Nevertheless, defendants attack plaintiffs' representation from an ethical standpoint. Defendants accuse counsel of soliciting Harris to be a plaintiff in this case. Challenging the propriety of his decision to advance the costs of the litigation, defendants also contend that the driving force behind the litigation is the attorney, and not the actual plaintiffs.

Counsel for plaintiffs adamantly denies the solicitation charge, claiming that Harris was contacted as a potential witness, after which she requested representation. At that point in time, counsel was already representing several other plaintiffs. Because the number of named plaintiffs in a class action does not ordinarily affect the size of the attorney's fee, it is not clear that counsel was concerned solely with securing greater fees for himself. *See Halverson v. Convenient Food Mart, Inc.*, 458 F.2d 927, 931 (7th Cir.1972). Aside from the conclusory assertion of solicitation, defendants have failed to present any evidence that Harris was contacted improperly or joined this action in an otherwise

involuntary manner. Mindful that the integrity of the class action is dependent on adequate representation, this court is unconvinced that counsel's actions amounted to the type of egregious misconduct that could arguably justify denial of class certification. *Id.* at 932.

■ Moreover, this court does not agree with defendants that counsel's representation of plaintiffs is rendered inadequate by virtue of their fee arrangement. The fee agreement provides that all costs will be satisfied out of the proceeds recovered by plaintiffs before any distribution is made to a class member. Plaintiffs will not be liable for expenses, however, in the event no recovery is obtained. Were the court to automatically deny class certification when counsel advances litigation costs to plaintiffs who possess little or no resources, the very purpose behind bringing a class action would be defeated. *Sayre v. Abraham Lincoln Fed. Sav. & Loan Ass'n*, 65 F.R.D. 379, 385 (E.D.Pa.1974). In a case such as this, where injunctive relief is sought and plaintiffs' individual damages may be small, the extensive costs of class litigation could preclude many victims of racial discrimination from ever being able to vindicate their rights. Fee arrangements which provide no reasonable expectation of reimbursement are not to be condoned, but a contrary ruling under these circumstances would prevent plaintiffs of modest means from pursuing a class action. Although the fee arrangement may give rise to a technical deviation from ethical standards, denial of class certification is unwarranted. *See Brame v. Ray Bills Fin. Corp.*, 85 F.R.D. 568, 577–78 (N.D.N.Y.1979); *see also* Note, *Developments in the Law—Class Actions*, 89 Harv.L.Rev. 1318, 1622–23 (1976) (absolute ban on advancing costs is not appropriate when it would effectively prevent a class suit). There is no indication that counsel's agreement to advance costs will compromise his representation of plaintiffs or unduly prejudice the class.[3]

---

**3.** Defendants also point to potential conflicts arising from the separate filing of a constructive discharge suit against GDC. Defendants assert

that counsel's representation of former GDC employees in that suit will frustrate the natural course of this litigation. Arguably, there are

*Absence of Conflicting Interests*

■ To further the best interests of the class, the class representatives must have sufficient personal knowledge of the underlying facts and be capable of understanding the nature of the case. 7A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1766 (2d ed. 1986). Defendants claim that Green and Harris do not have the character necessary to vigorously represent the class. Rather, defendants contend, Green and Harris are merely lending their names to a suit controlled by the class attorney.

Notwithstanding defendants' assault on plaintiffs' credibility, Green and Harris have first-hand knowledge and understanding of the case. Both applied for jobs at GDC, were actually interviewed by defendants, and were allegedly denied employment because of their race. Even if the individual monetary damages are small, plaintiffs have a significant interest in enjoining defendants from engaging in the very conduct that excluded them from employment. Thus, Green and Harris have a personal stake in the claims asserted on behalf of the class. This court is not convinced that the representatives lack the qualities needed to protect the interests of the class.

Defendants also take the position that as a one-time employee of GDC, Green is not a member of the putative class and, therefore, she lacks standing to represent the class. An appropriate class representative must "possess the same interest and suffer the same injury as the class members." *East Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216, 94 S.Ct. 2925, 2929, 41 L.Ed.2d 706 (1974)). Applying this standard, there is no question that Green has standing to represent the class. Regardless of whether Green applied for employment and was initially denied, or worked for two weeks before being told by her supervisor that she was never hired, Green suffered the same injury as the class. Like the class she seeks to represent, Green was essentially barred from working at GDC allegedly on account of race. There is no evidence that Green's interests are in any way divergent from those of the class.

■ Finally, defendants argue that class certification should be denied because plaintiffs' individual resources are insufficient to cover the substantial costs of maintaining a class action. Yet most, if not all, of the heavy costs of discovery have already been borne by the parties, and plaintiffs' representative attorney is assisting with the future costs of litigation. If the lack of unlimited resources to fund all aspects of the class action were the basis for a finding of inadequacy of representation, class actions brought by natural persons would rarely be certified. *Allen*, 99 F.R.D. at 55; *see also Klein v. Checker Motors Corp.*, 87 F.R.D. 5, 6 (N.D.Ill.1979) ("to require proof of vast financial resources from a putative class representative would contravene the policy underlying F.R.C.P. 23, to enable individuals of modest means to vindicate legal rights"). Fully aware of the heavy responsibility in financing a class action, this court finds that Green and Harris can adequately represent the class.

### 5. *Rule 23(b)*

■ In addition to satisfying the requirements of rule 23(a), plaintiffs must meet one of the conditions in 23(b). Fed.R. Civ.P. 23(b). Plaintiffs have moved to certify this action under 23(b)(2), which provides that a class action may be brought when defendants have "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). Despite the explicit reference to injunctive relief, courts have held that section 1981 and Title VII actions

---

issues common to both cases. Nonetheless, that case raises different legal theories and will undoubtedly require the presentation of evidence and proof of matters not relevant to this litiga-

tion. This court is unwilling to deny certification on speculation as to what effect a separate lawsuit could have on the proceedings in this case.

seeking monetary damages in addition to injunctive relief, such as this case, are appropriately brought under subdivision (b)(2). *See, e.g., Franks v. Bowman Transp. Co.,* 495 F.2d 398, 422 (5th Cir.), *cert. denied,* 419 U.S. 1050, 95 S.Ct. 625, 42 L.Ed.2d 644 (1974); *Robinson v. Lorillard Corp.,* 444 F.2d 791, 802 (4th Cir.1971), *cert. dismissed,* 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1972); *Bowe,* 416 F.2d at 720.

The Supreme Court has recognized that actions asserting racial discrimination "are often by their very nature class suits." *Rodriguez,* 431 U.S. at 405, 97 S.Ct. at 1897. Moreover, subdivision (b)(2) is particularly applicable to civil rights actions involving allegations of class discrimination. Fed.R.Civ.P. 23(b)(2) (advisory committee comments). Plaintiffs allege discriminatory conduct on the part of defendants, which affected all of the members of the class similarly. As the primary focus of this litigation is injunctive relief to halt the alleged classwide discriminatory hiring policy of defendants, plaintiffs' claims are especially suitable for certification under (b)(2). *See Arnett v. American Nat'l Red Cross,* 78 F.R.D. 73, 78 (D.D.C.1978). Consequently, plaintiffs' proposed class fits squarely within the parameters of rule 23(b)(2).

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for class certification is granted with respect to all black applicants who were denied employment at GDC on account of race. With respect to the persons who were discouraged from applying, plaintiffs' motion is denied. In addition, plaintiffs' motion to strike defendants' amended interrogatory answer is denied.

IT IS SO ORDERED.