Carole Billie OSHANA, on behalf of herself and all other similarly situated, Plaintiff,

v.

THE COCA–COLA COMPANY, Defendant.

No. 04 C 3596.

United States District Court, N.D. Illinois, Eastern Division.

Jan. 14, 2005.

Sarah Clasby Engel, Harke & Clasby LLP, Miami, FL, Michael B. Hyman, Much, Shelist, Freed, Denenberg, Ament & Rubenstein, P.C., Robert J. Stein, III, Stein Bogot, Ltd, Chicago, IL, for plaintiff.

Michael A. Pope, McDermott, Will & Emery LLP, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

Carole Billie Oshana ("Oshana") filed this class action against The Coca–Cola Compa-

ny ("Coca–Cola") for violating the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("the Consumer Fraud Act") and for unjust enrichment. On May 24, 2004, Coca–Cola removed this case from the Circuit Court of Cook County. The court previously granted Coca–Cola's summary judgment motion regarding the statute of limitations periods for Oshana's claims, narrowing the recovery periods. Memorandum Opinion & Order 7/30/04, Dkt. No. 28–1. Oshana's motion for class certification is before the court.

## BACKGROUND

Oshana alleges Coca–Cola employs an unfair and deceptive marketing scheme that conceals and misleads consumers into believing diet Coke from the fountain is the same product as diet Coke sold in a can or bottle. Second Am. Compl. at ¶ 1. Unlike bottled diet Coke, which is sweetened exclusively with aspartame, fountain diet Coke is sweetened with a mixture of aspartame and saccharin. *Id.* As a result, Oshana contends Coca–Cola has sold millions of dollars in beverages it would not have otherwise sold. *Id.* at ¶ 2. In addition, Oshana contends Coca–Cola has been unjustly enriched at the expense of Oshana and potential class members. *Id.* Oshana seeks certification of a boundless class of Illinois consumers of fountain diet Coke defined as:

> All individuals who purchased for consumption and not resale fountain diet Coke in the State of Illinois from March 12, 1999, through the date of the entry of an order certifying the class. Excluded from this Class are employees, officers, and directors of Coca–Cola.

*Id.* at ¶ 8. Oshana contends the proposed class meets the certification requirements of Fed.R.Civ.P. 23(a), 23(b)(1)(B) and/or 23(b)(3). *Id.* at ¶ 9. For the alleged Consumer Fraud Act violation, Oshana seeks disgorgement to the class of Coca–Cola's profits from its conduct since March 12, 2001, and her individual damages for her fountain diet Coke purchases since March 12, 2001. *Id.* at ¶ 61. For the unjust enrichment claim, Oshana seeks disgorgement of Coca–Cola's profits from its conduct since March 12, 1999. *Id.* at ¶ 67.

## DISCUSSION

### I. Collateral Estoppel

Before addressing the merits of the class certification motion, the court must address Coca–Cola's argument that the motion for class certification is collaterally estopped by *Zapka v. The Coca–Cola Co.,* No. 99 CV 8238, 2000 WL 1644539, *2–5, 2000 U.S. Dist. LEXIS 16552, *5–13 (N.D.Ill. Oct.26, 2000). Zapka alleged Coca–Cola violated the Illinois Consumer Fraud Act and other state consumer fraud acts by misrepresenting that fountain diet Coke and bottled diet Coke are the same product, even though fountain diet Coke contains saccharin. *Id.* at *1, 2000 U.S. Dist. LEXIS 16552, at *1. Zapka sought national class certification under Rule 23(b)(2) or Rule 23(b)(1) or, alternatively, multi-state or Illinois class certification. *Id.* at *2, 2000 U.S. Dist. LEXIS 16552, at *4. Zapka proposed to define the class as: (1) "all individuals who consumed diet Coke from the fountain, deceived by the marketing practices employed by Coca–Cola Company into believing that fountain diet Coke does not contain saccharin;" or (2) herself and all others similarly situated as representative of the proposed class of individuals who consumed fountain diet Coke after November of 1984;" or (3) "all residents of the fifty states and the District of Columbia, other than employees, officers and directors of the Coca–Cola Company, who purchased or consumed fountain diet Coke after November 30, 1984." *Id.* at *2, 2000 U.S. Dist. LEXIS 16552, at *4–5.

The court denied Zapka's motion for class certification, rejecting the first proposed class definition because "an identifiable class does not exist if membership in the class is contingent on the state of mind of the prospective members." *Id.* at *3, 2000 U.S. Dist. LEXIS 16552, at *7. The second proposed class definition was rejected because inclusion of "others similarly situated" made class membership contingent on state of mind since Zapka alleged she was deceived by the marketing practices. *Id.* at *3, 2000 U.S. Dist. LEXIS 16552, at *8–9. The court rejected the third proposed class definition as an insufficiently defined class because including individuals who consumed fountain diet Coke "after November 30, 1984" added a

new set of plaintiffs to the class each day. *Id.* at *3, 2000 U.S. Dist. LEXIS 16552 at *9–10. Finally, the court determined variations in state law and the significant number of individualized elements of proof rendered Zapka's claims unmanageable for class action. *Id.* at 3–5, 2000 U.S. Dist. LEXIS 16552 at *10–13. The court held "under either definition of the class *set out by the plaintiff,* multi-state or Illinois classification would also not be manageable..." *Id.* at *5, 2000 U.S. Dist. LEXIS 16552 at *13 (emphasis added).[1]

■ Collateral estoppel, or issue preclusion, applies when: (1) a plaintiff was fully represented in the prior action; (2) the issue sought to be precluded was involved in the prior action; (3) the issue was actually litigated to final judgment; and (4) determination of the issue was essential to the final judgment. *Adair v. Sherman,* 230 F.3d 890, 893 (7th Cir.2000); *Klingman v. Levinson,* 831 F.2d 1292, 1295 (7th Cir.1987).

Coca–Cola relies on *In re Bridgestone/Firestone,* 333 F.3d 763 (7th Cir.2003) to argue class certification may not be relitigated. *Bridgestone/Firestone* reversed a district court order certifying two nationwide class actions, in part due to the need to apply multiple states' laws to different class members. *In re Bridgestone/Firestone,* 288 F.3d 1012 (7th Cir.2002). Subsequently, plaintiffs filed class suits in many jurisdictions and, in at least five suits, sought certification of the previously rejected nationwide classes. *In re Bridgestone/Firestone,* 333 F.3d 763, 765 (7th Cir.2003). The Seventh Circuit held all members of the putative national classes were enjoined from re-seeking national certification of the same class, based on its prior decision that national certification was unsuitable. *Id.* at 769. However, the court specifically noted that defendants' desire to enjoin *all* class actions, even ones limited to a single product in a single state, was over-reaching. *Id.* at 765–66. The court emphasized that the only class previously considered on appeal was a *nationwide* class because the district court had not addressed any statewide classes. *Id.* Accordingly, the district court

properly denied defendants' request for an injunction that would preclude any class suit in any state court. *Id.* at 766.

■ While *Bridgestone/Firestone* holds that in some circumstances denial of class certification may be given estoppel effect, courts are cautioned not to read the case as holding *any* ruling denying class certification is binding in future litigation. *Carnegie v. Household Int'l, Inc.,* 376 F.3d 656, 662–63 (7th Cir.2004). This court has previously held that the principles of collateral estoppel do not apply here because different facts and a different plaintiff are before the court. Memorandum Opinion & Order 7/30/04, Dkt. No. 28–1 (Oshana argued summary judgment ruling in *Zapka* estopped Coca–Cola's summary judgment arguments). Moreover, Coca–Cola's issue preclusion argument fails because the issue resolved in *Zapka* is different from the issue presented here. In *Zapka,* the district judge explicitly denied class certification based on the class "as set out by plaintiff," and identified specific flaws in the proposed class definitions warranting denial of certification. Here, Oshana proposes a different class that, on its face, attempts to correct the flaws identified in *Zapka.* The proposed class does not seek to include only those deceived or similarly situated, nor does the class have an open-ended date for membership. Oshana is not seeking nationwide class certification, only Illinois class certification. While *Zapka* denied an Illinois class certification, the denial was based on the proof required by the Consumer Fraud Act as applied to Zapka's proposed class, which differs here.

## II. Class Certification

### A. Legal Standard

■ A court has broad discretion to determine whether class certification is appropriate. *Keele v. Wexler,* 149 F.3d 589, 592 (7th Cir.1998). Oshana bears the burden of establishing the requirements for class certification. *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72

1. The court subsequently denied Coca–Cola's summary judgment motion, 2001 WL 1558276, 2001 U.S. Dist. LEXIS 20155 (N.D.Ill.Dec. 3, 2001), and the individual suit settled. *Zapka v.* *Coca–Cola Co.,* 99 C 8238, Minute Order of 3/20/02 (granting agreed motion to dismiss pursuant to settlement).

L.Ed.2d 740 (1982); *Retired Chicago Police Ass'n v. Chicago,* 7 F.3d 584, 596 (7th Cir. 1993). Allegations made in support of class certification are considered true. *Hardin v. Harshbarger,* 814 F.Supp. 703, 706 (N.D.Ill. 1993). In general, the court must not consider the merits of the case. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Retired Chicago Police Ass'n,* 7 F.3d at 598. However, a court "may look beyond the pleadings to determine whether the requirements of Rule 23 have been satisfied." *Zapka,* 2000 WL 1644539 at *2, 2000 U.S. Dist. LEXIS 16552 at *5 (citations omitted); *see also Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 675 (7th Cir. 2001).

**B. Fed.R.Civ.P. 23(a)**

A plaintiff seeking class certification must satisfy the requirements of Fed.R.Civ.P. 23(a), which specifies that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *See Rosario v. Livaditis,* 963 F.2d 1013, 1017 (7th Cir.1992).

**1. Identifiable Class**

 Courts have implied two prerequisites to class certification that must be satisfied prior to addressing the requirements of Rule 23(a): (1) the class must be sufficiently defined so that the class is identifiable; and (2) the named representative must fall within the proposed class. *Guillory v. American Tobacco Co.,* No. 97 C 8641, 2001 WL 290603, *2, 2001 U.S. Dist. LEXIS 3353, *8 (N.D.Ill. Mar.19, 2001), *citing Alliance to End Repression v. Rochford,* 565 F.2d 975, 977 (7th Cir.1977); *Zapka,* 2000 WL 1644539 at *2, 2000 U.S. Dist. LEXIS 16552 at *6. The class description must be sufficiently definite to permit ascertainment of class members, and "the description must not be so broad as to include individuals who are without standing to maintain the action on their own behalf." *Guillory,* 2001 WL 290603 at *2, 2001 U.S. Dist. LEXIS 3353 at *8–9. Proper identification of the proposed class serves two purposes. First, it alerts the court and parties to the potential burdens class certification may entail. *Simer v. Rios,* 661 F.2d 655, 670 (7th Cir.1981). "In this way the court can decide whether the class device simply would be an inefficient way of trying the lawsuit for the parties as well as for its own congested docket." *Id.* Second, proper class identification insures that those individuals actually harmed by defendant's wrongful conduct will be the recipients of the awarded relief. *Id.; see also Zapka,* 2000 WL 1644539 at *2, 2000 U.S. Dist. LEXIS 16552 at *6–7.

Coca–Cola argues Oshana has failed to satisfy Rule 23(a)'s requirement that there be an identifiable class, ascertainable by reference to objective criteria, because the proposed class definition would require an examination of every class member who allegedly saw deceptive advertisements. Further, Coca–Cola argues the proposed class may improperly include individuals who were neither deceived nor harmed.

 Oshana contends she is not required to identify class members as a prerequisite to certification. Her argument misses the mark. The identities of class members do not need to be specified for certification, but the proposed class must be sufficiently definite in order to demonstrate that a class actually exists. *See Simer,* 661 F.2d at 669; *Guillory,* 2001 WL 290603 at *2, 2001 U.S. Dist. LEXIS 3353 at *8. The proposed class definition is facially defective. Class membership requires nothing but the mere purchase of a fountain diet Coke in Illinois during a five year period. The existence of the proposed class remains unknown because the definition fails to create membership that is contingent on any objectively ascertainable factors. In other words, the proposed class definition is overly inclusive and encompasses millions of potential members without any identifiable basis for standing.

 Further, an identifiable class does not exist if membership is contingent on a particular state of mind. *Zapka,* 2000 WL 1644539 at *2–3, 2000 U.S. Dist. LEXIS 16552 at *7. Oshana contends her proposed class definition, unlike *Zapka,* does not make membership contingent on any specific state of mind. However, merely revising a class

definition to characterize the class based on actions, as opposed to beliefs, does not necessarily make the class identifiable. *See Simer,* 661 F.2d at 669, n. 25. Oshana alleges class membership is based on an objective action—the purchase of a fountain diet Coke in Illinois during a five year period. However, a class definition that includes individuals who purchased fountain diet Coke with full knowledge that fountain diet Coke contains saccharin is clearly inappropriate. To recover, class members would be required to show they were misled, deceived, tricked, or treated unfairly. Class membership implies a state of mind element that requires an individual examination of each class member.

Oshana's proposed class is inadequately defined. Considerable cost and time would have to be expended by the court and parties before the class could even theoretically be identified. *Id.* Even if this court were to attempt to redefine the class, the effort would be futile. As discussed below, Oshana fails to satisfy the remaining requirements of Rule 23 because the massive number of individualized factual issues render her claim unmanageable as a class action. *See Guillory,* 2001 WL 290603 at *3, 2001 U.S. Dist. LEXIS 3353 at *10; *Zapka,* 2000 WL 1644539 at *3, 2000 U.S. Dist. LEXIS 16552 at *10.

### 1. Rule 23(a)(1)—Numerosity

The standard for evaluating numerosity is whether the class is so numerous that joinder of all parties is impracticable. Oshana contends Rule 23(a)(1)'s numerosity requirement is easily satisfied because Coca–Cola sells millions of fountain diet Coke drinks in Illinois each year. She asserts it is impracticable to join all purchasers of fountain diet Coke and class action status is appropriate. Courts should make common sense assumptions when assessing numerosity. *Grossman v. Waste Management,* 100 F.R.D. 781, 785 (N.D.Ill.1984). Considering the enormous amount of fountain diet Coke sold in Illinois yearly, it is safe to assume the class is so numerous that joinder is impracticable.

### 2. Rule 23(a)(2)—Commonality

Rule 23(a)(2) requires the existence of questions of law or fact common to the class. This requirement is satisfied when a common nucleus of operative facts exists. *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir.1992). Oshana asserts that one of the common questions of law or fact is whether Coca–Cola's sale of fountain diet Coke with undisclosed saccharin constitutes a violation of the Consumer Fraud Act and resulted in unjust enrichment. The complaint alleges twelve questions of law or fact that Oshana contends are common to all class members. Coca–Cola does not dispute that Rule 23(a)(2) is satisfied. Accordingly, the court will not evaluate Oshana's alleged issues of law and fact. *See Harris v. General Dev. Corp.,* 127 F.R.D. 655, 661 (N.D.Ill.1989) (Rule 23(a)(2) satisfied with a single issue of law or fact common to all members of the class). The commonality requirement is satisfied because there is at least one common question as to whether Coca–Cola was unjustly enriched or violated the Consumer Fraud Act by misrepresenting or omitting material facts regarding the contents of fountain diet Coke.

### 3. Rule 23(a)(3)—Typicality

Rule 23(a)(3)'s typicality requirement is closely related to Rule 23(a)(2)'s commonality requirement. *Rosario,* 963 F.2d at 1018. Oshana's claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members" and if her claims are "based on the same legal theory." *Id., citing De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983). Factual distinctions between the named plaintiff's claims and those of the putative class members do not necessarily defeat a typicality finding. *De La Fuente,* 713 F.2d at 232.

Coca–Cola relies on *Retired Chicago Police Ass'n v. Chicago,* 141 F.R.D. 477 (N.D.Ill.1992) to argue the claims are not typical because Oshana and the putative class members were exposed to varying representations regarding diet Coke. Indeed, Coca–Cola argues typicality is defeated due to the lack of any representations relied on by Oshana. In *Retired Chicago Police Ass'n,* the Retired Chicago Police Association ("RCPA") filed a class action against the City

of Chicago on behalf of four pension funds, alleging violations of 42 U.S.C. § 1983, breach of contract, estoppel and violations of the Illinois Constitution. The RCPA claimed the city promised certain health coverage rates and subsidies through oral representations at retirement seminars, in a booklet explaining benefits, and by word of mouth and general understanding. This court denied RCPA's motion for class certification holding, in part, RCPA failed to establish Rule 23(a)(3)'s typicality requirement. The Seventh Circuit agreed, holding typicality did not exist because RCPA's claims were based on communications relied upon by the annuitants, yet it was unknown whether the communications made to each group of city employees were identical. *See Retired Chicago Police Ass'n v. Chicago*, 7 F.3d 584, 597 (7th Cir.1993). "Because the RCPA does not include individuals from all of the fund groups and there is no indication that each of these groups was treated identically by the City or by its respective fund, its claims cannot be deemed typical of the entire proposed class." *Id.* Coca–Cola's reliance on *Retired Chicago Police Ass'n* is misplaced. There, the nature of the claims alleged necessarily defeated typicality. Each group of employees would have had different legal claims based on different legal theories, depending on the nature of communications received and resulting causation.

Oshana contends her claims are similar to those in *Tylka v. Gerber Prods. Co.*, 178 F.R.D. 493 (N.D.Ill.1998). Tylka alleged violations of the Consumer Fraud Act and common law fraud, claiming Gerber deceptively advertised its baby food products as pure and natural, while failing to disclose the products contained added water, sugar and starches. *Id.* The court rejected Gerber's argument that typicality was defeated because class members saw different advertisements at different times, and bought Gerber's products for different reasons. *Id.* at 500–01. *Tylka* held all class members were subjected to the same allegedly fraudulent practices because all purchased adulterated Gerber baby products and, regardless which advertisements were seen or whether *any* advertisements were seen, the advertisements were allegedly misleading. *Id.* The court held all class members had the same claims, namely that Gerber adulterated its foods and made false representations in advertisements. *Id.*

■ *Tylka* is not factually analogous to this case. Coca–Cola does not advertise and sell fountain diet Coke—it sells syrup. In any event, Oshana's claims are not sufficiently typical of the class to support class certification. Factual distinctions between her claims and those of putative class members do not necessarily defeat a typicality finding. *De La Fuente*, 713 F.2d at 232. However, the differences between Oshana's claims and those of the proposed class members "are not merely factual differences regarding the circumstances of how their claims initiated—they impact the very legal theories on which the class can proceed." *Guillory*, 2001 WL 290603 at *5, 2001 U.S. Dist. LEXIS 3353 at *15–16. Oshana contends she and the proposed class members purchased fountain diet Coke because Coca–Cola concealed information regarding fountain diet Coke's saccharin contents. To prove these claims, Oshana must establish a causal connection between the alleged misconduct and damages, namely that deceptive marketing induced each class member to purchase fountain diet Coke. *See id.* This is impossible to prove on a classwide basis, despite Oshana's contention that individualized exposures to marketing are irrelevant because the marketing campaigns had the same effect on all members. Coca–Cola's marketing may be just one of many reasons for an individual's decision to purchase the product. *See id.* at *5, 2001 U.S. Dist. LEXIS 3353 at *16–17. Given the great potential variations for class members' claims, typicality does not exist. *See id.* at *5, 2001 U.S. Dist. LEXIS 3353 at *17.

### 4. Rule 23(a)(4)—Fair and Adequate Representation

■ Rule 23(a)(4) requires the named plaintiff to fairly and adequately protect the interests of the class. This determination requires fulfillment of two conditions: (1) plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (2) the named plaintiff must not have interests antagonistic to those of the class. *See Secretary of Labor v.*

*Fitzsimmons,* 805 F.2d 682, 697 (7th Cir. 1986). "The presence of even an arguable defense against the named plaintiffs that is not applicable to the proposed class can vitiate the adequacy of named plaintiffs' representation." *Allen v. CTA,* No. 99 C 7614, 2000 WL 1207408, *11, 2000 U.S. Dist. LEXIS 11043, *33 (N.D.Ill. July 28, 2000).

Oshana asserts her attorneys are members of good standing in their respective state bars, have prosecuted hundreds of class actions and have the resources necessary to prosecute this action. Coca–Cola does not challenge the adequacy of Oshana's counsel and the court finds no reason to do so.

Oshana contends her interests are co-extensive with those she seeks to represent. Coca–Cola lists five factors that render her an inadequate class representative: (1) she did not see any advertisements during the relevant class period; (2) she continues to purchase fountain diet Coke despite knowing it contains saccharin; (3) she avoids saccharin because of the taste, as opposed to health reasons; (4) she knows saccharin warning labels were removed and that the government does not consider saccharin a health risk; and (5) she can taste a difference between the sweeteners in fountain diet Coke and bottled diet Coke. Coca–Cola contends Oshana is therefore subject to unique defenses not applicable to the proposed class.

 These factors certainly appear to weaken Oshana's case, but they do not necessarily render her inadequate to represent the interests of the class. For example, her failure to see advertisements during the relevant class period and her continued purchase of fountain diet Coke may differentiate her from other class members, but it does not necessarily preclude her from recovery. Under the Consumer Fraud Act, a plaintiff must establish proximate cause, but proof of reliance is not required. *See Zapka,* 2000 WL 1644539 at *4, 2000 U.S. Dist. LEXIS 16552 at *12; *see also Nance v. Lawrence Friedman P.C.,* No. 98 C 6720, 1999 WL 966444, *2, 1999 U.S. Dist: LEXIS 16524, *5–6 (N.D.Ill. Oct. 18, 1999) (fact that plaintiff was not misled did not render her claims atypical or render her an inadequate class representative). The flaws Coca–Cola identifies are relatively immaterial and primarily concern the strength of Oshana's case. Consider-

ation of the merits is inappropriate for class certification purposes. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Retired Chicago Police Ass'n,* 7 F.3d 584, 598 (7th Cir.1993). Coca–Cola's assertions, even if true and accurate, do not establish Oshana's claim is a "clear loser." *Robinson v. Sheriff of Cook County,* 167 F.3d 1155, 1158 (7th Cir.1999).

## C. Rule 23(b)

Oshana's defective class definition and failure to establish the typicality of her claims renders her unable to meet the requirements of Rule 23(a). However, even if she met Rule 23(a)'s requirements, she fails to satisfy the certification requirements of Rule 23(b)(1)(B) or Rule 23(b)(3).

### 1. Rule 23(b)(1)(B)

Rule 23(b)(1)(B) requires a showing that:

The prosecution of separate actions by or against individual members of the class would create a risk of adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

*See also Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 833, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999).

Oshana contends Coca–Cola's removal from the Circuit Court of Cook County was based on satisfaction of the $75,000 diversity requirement on a theory of disgorgement of all Coca–Cola's profits from the sale of fountain diet Coke. If Oshana prevails individually and disgorges all Coca–Cola's profits from its alleged wrongful conduct in Illinois, she contends Coca–Cola will likely argue it would not have profits to disgorge if it is subsequently sued by another class member. She argues individual adjudication of this case would be dispositive of other putative class members' interests and Rule 23(b)(1)(B) certification is appropriate, whether the court views the disgorgement claim as a common undivided interest or an individual claim for disgorgement of profits Coca–Cola has made from all putative class members.

Coca–Cola argues Oshana's construction of Rule 23(b)(1)(B), if correct, would require certification of every class as long as the plaintiff requested disgorgement of profits. According to Coca–Cola, Oshana seeks to aggregate unliquidated tort claims on a limited fund rationale that is improper according to *Ortiz.* Coca–Cola contends there is no pre-existing limited fund because the company has adequate resources to pay the claims of other putative class members.

 Under 23(b)(1)(B), class members are not provided notice and an opportunity to exclude themselves from class membership. *Ortiz,* 527 U.S. at 833, n. 13, 119 S.Ct. 2295. Thus, Rule 23(b)(1)(B) must be narrowly interpreted. *Id.* at 842, 119 S.Ct. 2295. While Oshana correctly points out that certification of a class under 23(b)(1)(B) is not restricted solely to a limited fund rationale, limited funds are "certainly the paradigm case." *See Doe v. Karadzic,* 192 F.R.D. 133, 139 n. 9 (S.D.N.Y.2000). The Advisory Committee Notes to Rule 23(b)(1)(B) discuss situations where the rule may be applicable, including actions by shareholders to compel the declaration of a dividend, or when claims are made by numerous persons against a fund insufficient to satisfy all claims. Oshana contends she is not attempting to aggregate unliquidated tort claims on a limited fund rationale. Her central argument is that Coca–Cola may later take the position it has no profits left to disgorge in future suits if she disgorges all Coca–Cola's profits. In response, Coca–Cola represents:

> [I]t cannot in good faith be disputed that Coca–Cola has adequate resources to pay claims of other putative class members. Even if Ms. Oshana were awarded a full disgorgement of all of Coca–Cola's profits from the sale of fountain diet Coke in Illinois, that amount would be only a small percentage of Coca–Cola's profits from the sale of fountain diet Coke in the United States and an even smaller fraction of Coca–Cola's profits from the sale of all of its products.

Coca–Cola Resp. at 36–37. In light of the requirement that Rule 23(b)(1)(B) be construed narrowly, and because Oshana has failed to demonstrate a valid rationale, limited fund or otherwise, Rule 23(b)(1)(B) certification must be denied.

### 2. Rule 23(b)(3)

 Rule 23(b)(3) requires a showing that:

> Questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

"In considering Rule 23(b)(3)'s requirements, the court must review the substantive elements of plaintiffs' cause of action, the proof necessary for the various elements and the manageability of the trial on these issues." *Rodriguez v. Ford Motor Credit Co.,* No. 01 C 8526, 2002 WL 655679, *4, 2002 U.S. Dist. LEXIS 7280, *13 (N.D.Ill. Apr. 18, 2002), *citing Simer v. Rios,* 661 F.2d 655, 672 (7th Cir.1981). The court is obligated to determine whether the existence of individual issues preclude certification, and must take into account the substantive elements of the claims so as to envision the form a trial on the issues would take. *Zapka,* 2000 WL 1644539 at *4, 2000 U.S. Dist. LEXIS at *11. Where liability determinations are both individual and fact-intensive, class certification under Rule 23(b)(3) is improper. *Rodriguez,* 2002 WL 655679 at *5, 2002 U.S. Dist. LEXIS 7280 at *16.

### A. Individual Questions of Law or Fact Predominate

Oshana contends there is at least one question common to the class that predominates over questions affecting individual members: "whether Coca–Cola misrepresented or omitted material facts regarding the ingredients of fountain diet Coke, and whether this practice violates the Consumer Fraud Act and constitutes unjust enrichment." Oshana Mot. at 13. Coca–Cola responds that individual issues regarding proximate causation predominate over common issues, and certification should be precluded based on *Oliveira v. Amoco Oil Co.,* 201 Ill.2d 134, 267 Ill.Dec. 14, 776 N.E.2d 151 (Ill.2002) and *Shannon v. Boise Cascade Corp.,* 208 Ill.2d 517, 281 Ill. Dec. 845, 805 N.E.2d 213 (Ill.2004). Coca–Cola contends the Illinois Supreme Court's holdings in *Oliveira* and *Shannon* make clear

that to establish proximate causation and thus a violation of Section 2 of the Consumer Fraud Act, a plaintiff actually must be deceived. *Oliveira*, 201 Ill.2d at 155, 267 Ill. Dec. 14, 776 N.E.2d at 164; *Shannon*, 208 Ill.2d at 525, 281 Ill.Dec. 845, 805 N.E.2d at 217. Coca–Cola concludes issues of proximate cause and actual deception under the Consumer Fraud Act require individual determinations precluding typicality and class certification. Specifically, Coca–Cola contends each putative class member was exposed to a different mix of representations and the materiality of those representations varied among the class members.

The Consumer Fraud Act provides:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", ... in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2.

■ The Consumer Fraud Act did not originally provide a private cause of action for violations of Section 2; unlawful business practices were generally prosecuted by the state attorney general. *Oliveira*, 201 Ill.2d at 148, 267 Ill.Dec. 14, 776 N.E.2d at 160. In 1973, Section 10a(a) was added (815 ILCS 505/10a(a)), expressly authorizing private causes of action to any person who suffers "actual damages" as a result of a violation of the Act. *Id.*, 201 Ill.2d at 148–49, 267 Ill.Dec. 14, 776 N.E.2d at 160. "Further, a private cause of action brought under section 10a(a) requires proof that the damage occurred 'as a result of the deceptive act or practice.' " *Id.*, 201 Ill.2d at 149, 267 Ill.Dec. 14, 776 N.E.2d at 160. "This language imposes a proximate causation requirement." *Id.* Thus, to succeed on a private cause of action for a violation of Section 2 of the Consumer Fraud Act, a plaintiff must establish: "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Id.; see also Murry v. America's Mortgage Banc, Inc.*, No. 03 C 5811, 2004 WL 1474584, *6–7, 2004 U.S. Dist. LEXIS 12045, *18–19 (N.D. Ill. June 25, 2004). A plaintiff need not prove reliance; however, she must show proximate cause. *Zapka*, 2000 WL 1644539 at *4, 2000 U.S. Dist. LEXIS 16552 at *12.

In *Oliveira*, the plaintiff alleged the defendant violated the Consumer Fraud Act by misrepresenting in nationwide advertising that its gasolines cleaned car engines and benefited the environment. *Id.* The plaintiff alleged the advertising increased demand for the gasoline and permitted defendant to charge inflated prices. *Id.* The plaintiff contended all purchasers were injured, whether or not they were exposed to the advertisements, by paying inflated prices. *Id.* The *Oliveira* court rejected this "market theory" of proximate causation for deceptive advertising because the plaintiffs did not allege they were deceived in any way by defendant's ads. *Id.*

In *P.J.'s Concrete Pumping Serv., Inc. v. Nextel West Corp.*, 345 Ill.App.3d 992, 281 Ill.Dec. 399, 803 N.E.2d 1020 (Ill.App.2004), the court considered the certified question "Did the Illinois Supreme Court decision in *Oliveira* ... change the pleading requirements for misrepresentation claims in a class action suit under the Illinois Consumer Fraud Act to require an allegation of actual deception by each individual class member?" *Id.*, 345 Ill.App.3d at 994, 281 Ill.Dec. 399, 803 N.E.2d at 1023. In holding *Oliveira* did not change the pleading requirements, the court noted *Oliveira* did not address class certification or establish any requirements governing class actions under the Consumer Fraud Act. *Id.*, 345 Ill.App.3d at 1001–02, 281 Ill.Dec. 399, 803 N.E.2d at 1028–29. Rather, *Oliveira* rejected plaintiffs' "market theory" (also asserted in *Shannon*) that was premised on an assumption that none of the plaintiffs were actually deceived because they could not show proximate causation. *Id.*, 345

Ill.App.3d at 1002, 281 Ill.Dec. 399, 803 N.E.2d at 1029. Further, the court rejected defendant's argument that individual issues regarding actual deception, and hypothetical reactions to defendant's conduct, predominated to preclude class certification because "it is proper to allow a class action where a defendant is alleged to have acted wrongfully in the same basic manner towards an entire class." *Id.,* 345 Ill.App.3d at 1003, 281 Ill. Dec. 399, 803 N.E.2d at 1029. The Illinois Supreme Court denied an appeal of the *Nextel* decision, 209 Ill.2d 584, 286 Ill.Dec. 166, 813 N.E.2d 223 (Ill.2004), and the United States Supreme Court denied *certiorari,* — U.S. —, 125 S.Ct. 410, — L.Ed.2d — (2004).

■ Coca–Cola argues that the proposed class action necessarily requires individual inquiries into whether each class member was actually deceived. This argument fails in light of *Nextel* because a Consumer Fraud Act violation does not require a showing of actual deception. However, the remaining elements of proof demonstrate that individualized issues will predominate over common issues of fact or law. Oshana contends the mix of representations seen by the class members is irrelevant and insufficient to preclude certification because her claim rests on uniform omission of information. However, causation remains an inherent part of the liability equation. *Zapka,* 2000 WL 1644539 at *4, 2000 U.S. Dist. LEXIS 16552 at *12. To demonstrate a violation of the Consumer Fraud Act, plaintiffs must show that a deceptive act or misrepresentation proximately caused injury. *Guillory,* 2001 WL 290603 at *7–8, 2001 U.S. Dist. LEXIS 3353 at *24. To establish proximate causation, each individual must provide evidence of his or her knowledge of the deceptive acts and purported misstatements. *Id.* at *7–8, 2001 U.S. Dist. LEXIS 3353 at *24–25. This showing requires an individual analysis of the extent to which Coca–Cola's marketing played a role in each class member's decision to purchase fountain diet Coke. Without determining what each member heard, saw, or knew, it is impossible to assign liability. *Id.* at *8, 2001 U.S. Dist. LEXIS 3353 at *25. Identification of the individuals properly included in the class would constitute a massive fact-specific inquiry virtually involving millions of putative class members. Each potential class member likely had varying degrees of knowledge, if any, regarding fountain diet Coke's contents due to varying exposure to various representations. These highly individualized factual determinations preclude certification. *Id., citing Williams v. Ford Motor Co.,* 192 F.R.D. 580, 585 (N.D.Ill.2000) (refusing to certify a Consumer Fraud Act class action, noting that "individual issues of causation ... often plague class actions brought under the Illinois Consumer Fraud Act").

■ The same analysis applies to Oshana's unjust enrichment claim. In her complaint, Oshana alleges class members were "tricked" by Coca–Cola's marketing scheme into purchasing fountain diet Coke that they would not have otherwise purchased. Compl. at ¶¶ 63–64. Individualized issues of detriment and whether each member was tricked would predominate over any common issues of law or fact.

Consideration of the substance of Oshana's claims, as well as the form that resolution of these issues would take, mandate a finding that the highly individualized nature of the inquiries predominates over issues common to the class. *See Simer,* 661 F.2d at 672; *see also Birnberg v. Milk Street Res. Assocs. Ltd.,* No. 02 C 0978, 2003 WL 21267103, *7, 2003 U.S. Dist. LEXIS 9097, *19–23 (N.D.Ill. May 28, 2003) (individual questions of causation and damages predominated over common issues and precluded class certification); *Ibrahim v. Old Kent Bank,* No. 99 C 999, 2000 WL 263987 at *6, 2000 U.S. Dist. LEXIS 2676 at *16 (N.D.Ill. Feb. 25, 2000) ("as a prerequisite to recovering under the [Consumer Fraud Act] each class member will have to make an individual showing that [defendant] proximately caused his or her damages").

### B. Class Action is Not a Superior Method of Adjudication

■ The obvious difficulties in managing this purported class action are pertinent to the court's decision to deny certification. Rule 23(b)(1)(3). The proposed class action is unmanageable in light of essential individualized inquiries. The boundless class definition creates a purported class of millions. Considerations of manageability and judicial economy would not be served by certification.

*Guillory,* 2001 WL 290603 at *9–10, 2001 U.S. Dist. LEXIS 3353 at *30. A class action is not a superior method of adjudication when "extensive individualized proceedings to determine causation, damages and reliance" are unavoidable. *Birnberg,* 2003 WL 21267103 at *7, 2003 U.S. Dist. LEXIS 9097 at *19–23; *see also Fisher v. Bristol–Myers Squibb Co.,* 181 F.R.D. 365, 373 (N.D.Ill. 1998) (little efficiency gained when court would need to participate in "extensive individualized proceedings regardless of whether we certify a class"). Oshana's motion for class certification must be denied.

## CONCLUSION

For the foregoing reasons, the motion for class certification is denied.