STATE ex rel. The COCA–COLA COMPANY, Relator,

v.

The Honorable W. Stephen NIXON, Respondent.

No. SC 88531.

Supreme Court of Missouri, En Banc.

April 15, 2008.

Christopher M. Murphy, Michael A. Pope, McDermott, Will & Emery, LLP, Chicago, IL, John F. Murphy, Lori R. Schultz, Shook Hardy Bacon, LLP, Taylor Fields, Fields & Brown, Kansas City, Russell S. Bonds, Litigation Counsel, Atlanta, GA, for Relator.

Ralph K. Phalen, Kansas City, Ben Barnow, Chicago, IL, for Respondent.

Ann K. Covington, Dan H. Ball, Elizabeth C. Carver, Bryan Cave, LLP, St. Louis, Hugh F. Young, Jr., Reston, VA, Amicus Curiae for Product Liability Council, Inc.

WILLIAM RAY PRICE, JR., Judge.

## I. INTRODUCTION

Diana Pennington alleges that Coca–Cola made affirmative misrepresentations and omitted material information regarding the types of artificial sweeteners used in fountain Diet Coke in violation of section 407.025.[1] At Pennington's request, the circuit court certified the lawsuit as a class action. In its petition for a writ of prohibition, Coca–Cola argues that the circuit court abused its discretion when it certified an overly broad and indefinite class. This Court issued a preliminary writ, which we now make absolute.

## II. FACTUAL AND PROCEDURAL HISTORY

In March 2004, Diana Pennington filed the underlying action against Coca–Cola in the Circuit Court of Jackson County. Pennington claims that Coca–Cola employed a deceptive marketing scheme that misled consumers into believing that fountain Diet Coke is the same product as bottled Diet Coke in violation of section 407.025.1.[2] Since 1984, fountain Diet Coke has been sweetened with a blend of aspartame and saccharin while bottled Diet Coke has been sweetened exclusively with

---

1. All references are to RSMo 2000 unless otherwise noted.

 Section 407.025.1 states, in pertinent part:

 Any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020, may bring a private civil action ... to recover actual damages. The court may, in its discretion, award punitive damages and may award to the prevailing party attorney's fees, based on the amount of time reasonably expended, and may provide such equitable relief as it deems necessary or proper.

 Section 407.020.1, RSMo Supp.2007, prohibits:

 The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose ... in or from the state of Missouri....

2. For purposes of this analysis, Pennington's unjust enrichment claim and section 407.025 claim need not be distinguished. Section 407.025.3 specifically authorizes the maintenance of class actions "in a manner consistent with Rule 23 of the Federal Rules of Civil Procedure and Missouri rule of civil procedure 52.08 to the extent such state rule is not inconsistent with the federal rule." Thus, cases interpreting Rule 52.08 are applicable to the instant case. Additionally, cases interpreting the federal rule are informative here. See State ex rel. Union Planters Bank, N.A. v. Kendrick, 142 S.W.3d 729, 735 n. 5 (Mo. banc 2004).

aspartame. Pennington contends that she and many other consumers would not have purchased fountain Diet Coke if they had known it contained saccharin. She further contends that the deception, itself, resulted in irreparable harm.

In her motion for certification, Pennington proposed the following class definition:

All individuals who purchased for consumption and not resale fountain diet Coke in the State of Missouri after March 24, 1999 through the date of this order. Excluded from this Class are employees, officers, and directors of Defendant.

She offered no estimate on the potential size of this proposed class. The circuit court adopted the proposed class definition and certified the class action.

Coca–Cola subsequently filed for permission to appeal the certification order under Rule 52.08(f). The court of appeals denied Coca–Cola's request. Coca–Cola then filed a petition for a writ of prohibition with this Court, and we issued a preliminary writ.

### III. ANALYSIS

#### A. Writ of Prohibition

■ Pennington argues that the interlocutory appellate process authorized by section 512.020 and Rule 52.08(f) affords adequate relief and, thereby, precludes Coca–Cola from resorting to the writ of prohibition. While the statute and the rule authorize a new interlocutory appeal regarding class certification, they do not deprive this Court of its Article V, section 4.1 power to "issue and determine original remedial writs."

■ "The right to appeal is purely statutory and, where a statute does not give a right to appeal, no right exists." *Riverside–Quindaro Bend Levee Dist. v. Intercont'l Eng'g Mfg.*, 121 S.W.3d 531,

532 (Mo. banc 2003); *see also* Rule 81.01. In 2004, the General Assembly amended section 512.020 to permit interlocutory appeals of class action certification orders. That section states, in pertinent part:

Any party to a suit aggrieved by any judgment of any trial court in any civil cause from which an appeal is not prohibited by the constitution, nor clearly limited in special statutory proceedings, may take his or her appeal to a court having appellate jurisdiction from any:

. . .

3. Order granting or denying class certification provided that: (a) The *court of appeals, in its discretion, permits such an appeal;* and (b) An appeal of such an order shall not stay proceedings in the court unless the judge or the court of appeals so orders.

. . . .

(emphasis added). The Court amended Rule 52.08 to incorporate this new appellate review. The amended rule provides, in pertinent part:

An appellate court *may permit* an appeal from an order of a circuit court granting or denying class action certification under this Rule 52.08 if a petition is timely filed as provided in Rule 84.035. . . .

Rule 52.08(f) (emphasis added). Of the five grounds from which appeals can be taken under section 512.020, an order granting or denying class certification is the only ground for which the General Assembly allows discretion. Thus, section 512.020 and Rule 52.08(f) do not permit an appeal of certification orders as of right; they merely create the potential for an appeal.

■ If the court of appeals permits an appeal, the case is then pending in that court and is subject to transfer to the

Supreme Court under Rule 83.[3] If the court of appeals does not permit an appeal, the case never comes before that court, and, consequently, there is nothing to transfer from the court of appeals.[4] The certification order remains in force as if the aggrieved party did not seek permission to appeal. At that point, the only alternative left to the aggrieved party is to petition this Court for a writ of prohibition directed at the circuit court.[5] *See* 17 DANIEL P. CARD II & MARK G. ARNOLD, MISSOURI PRACTICE *Civil Rules Practice* section 81.01–5A (3d ed. Supp. 2007–2008). This Court has repeatedly held that " 'prohibition may be appropriate to prevent unnecessary, inconvenient, and expensive litigation.' " [6] *Union Planters,* 142 S.W.3d at 735 (quoting *State ex rel. Linthicum v. Calvin,* 57 S.W.3d 855, 857 (Mo. banc 2001)); *see also State ex rel. Am. Family Mut. Ins. Co. v. Clark,* 106 S.W.3d 483, 486 (Mo. banc 2003).

Here, Coca–Cola petitioned the court of appeals to review the circuit court's certification order. The court of appeals did not grant leave to appeal. Thus, there was no case pending in the court of appeals. Coca–Cola properly invoked this Court's power to grant a remedial writ directed at the circuit court under Article V, section 4.1.

### B. Standard of Review

" 'Determination of whether an action should proceed as a class action under Rule 52.08 ultimately rests within the sound discretion of the trial court.' " *Union Planters,* 142 S.W.3d at 735 (quoting *Am. Family,* 106 S.W.3d at 486). A circuit court "abuses its discretion if 'its order is clearly against the logic of the circumstance, is arbitrary and unreasonable, and indicates a lack of careful consideration.' " *State ex rel. Ford Motor Co. v. Manners,* 239 S.W.3d 583, 586–87 (Mo. banc 2007) (quoting *State ex rel. Ford Motor Co. v. Messina,* 71 S.W.3d 602, 607 (Mo. banc 2002)).

### C. Class Definition

Class actions are designed to provide an "economical means for disposing of similar lawsuits" while simultaneously protecting defendants from inconsistent obligations and the due process rights of absentee class members. *See United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 402–03, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). Although the express elements for class action certification are designed to accomplish these goals, courts must not forget that the underlying question in any class action certification is

---

**3.** Under Article V, section 10 of the Missouri Constitution, "[c]ases pending in the court of appeals" are subject to transfer to this Court.

**4.** This conclusion only applies to petitions for appeal. In *Karen Little, LLC v. Brinker Missouri, Inc.,* 185 S.W.3d 784 (Mo.App.2006), for instance, the aggrieved party appealed without first seeking the court of appeals' permission to do so. The court, therefore, dismissed that appeal as an impermissible interlocutory appeal. Although permission was not sought, the case was undoubtedly pending before the court of appeals after the appeal was filed.

**5.** The aggrieved party need not take the futile step of applying for a writ of prohibition at the court of appeals if that court has already denied the party's petition for appeal. The aggrieved party may directly petition this Court.

**6.** This procedure is analogous to the process for remedial writs. If the court of appeals issues an opinion, the case is subject to transfer to this Court under Rule 84.24(n). *See, e.g., Mo. State Bd. of Registration for the Healing Arts v. Brown,* 121 S.W.3d 234, 235 (Mo. banc 2003). If the court of appeals does not issue an opinion, an aggrieved party may directly petition this Court for relief.

whether the class action device provides the most efficient and just method to resolve the controversy at hand, all things considered.

■■■■ Class actions brought under the Merchandising Practices Act are governed by section 407.025.3 and Rule 52.08. All class actions must satisfy the following four elements:

(1) *the class* is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to *the class,* (3) the claims or defenses of the representative parties are typical of the claims or defenses of **the class,** and (4) the representative parties will fairly and adequately protect the interests of *the class.*

Rule 52.08(a) (emphasis added). Neither the statute nor the rule explicitly mentions proper class definition. However, such a requirement clearly underlies each of the mandatory elements for certification. *See Oshana v. The Coca–Cola Co.,* 225 F.R.D. 575, 580 (N.D.Ill.2005), *aff'd,* 472 F.3d 506 (7th Cir.2006); 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE: CIVIL section 1760 (3d ed. 2005). Moreover, a properly defined class is necessary to realize both the protections and benefits for which the class action device was created. *See Dale v. DaimlerChrysler Corp.,* 204 S.W.3d 151, 177–78 (Mo.App.2006); *Oshana,* 225 F.R.D. at 580; *Ad Hoc Comm. to Save Homer G. Phillips Hosp. v. City of St. Louis,* 143 F.R.D. 216, 219 (E.D.Mo.1992). "Before considering the criteria established by [section 407.025.3 and Rule 52.08, therefore,] it is first necessary to determine whether the class exists and is capable of legal definition." *Vietnam Veterans Against the War v. Benecke,* 63 F.R.D.

675, 679 (W.D.Mo.1974). If a class is not properly defined, the circuit court must deny certification.

### 1. Overbroad Classes

■■■■ A class definition that encompasses more than a relatively small number of uninjured putative members is overly broad and improper. *See Oshana v. Coca–Cola Co.,* 472 F.3d 506, 514 (7th Cir. 2006); *DeBremaecker v. Short,* 433 F.2d 733, 734 (5th Cir. 1970); *Pagan v. Dubois,* 884 F.Supp. 25, 28 (D.Mass.1995); Vietnam Veterans, 63 F.R.D. at 681. That being said, a putative class may initially include members who could not have brought the underlying action in their own name. In that circumstance, the class definition may be modified consistent with the precepts of section 407.025.3 and Rule 52.08 in order to remove the uninjured putative members.[7] *See Davoll v. Webb,* 194 F.3d 1116, 1146 (10th Cir.1999); *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir.1984); *Pagan,* 884 F.Supp. at 28. If, after such modification, a relatively small number of uninjured putative members remain, the circuit court can easily resolve individual questions after the common questions have been answered. If this result cannot be achieved, the putative class is impermissibly overbroad.

### 2. Indefinite Classes

■■■■ Likewise, a proposed class definition may be improper because the putative class is indefinite. " 'The primary concern underlying the requirement of a class capable of definition is that the proposed class not be amorphous, vague, or indeterminate.' " *Craft v. Philip Morris*

---

**7.** In this context, injury is not synonymous with damages. The need for individual inquiry into damages typically will not defeat predominance. *See Am. Family,* 106 S.W.3d at 489 n. 5.

*Cos., Inc.,* 190 S.W.3d 368, 387 (Mo.App. 2005) (quoting *In re Tetracycline Cases,* 107 F.R.D. 719, 728 (W.D.Mo.1985)); *see also Vandyne v. Allied Mortgage Capital Corp.,* 242 S.W.3d 695, 697 (Mo. banc 2008); *DeBremaecker,* 433 F.2d at 734. The class definition must be sufficiently definite so that it is administratively feasible to identify members of the class. *See Craft,* 190 S.W.3d at 387–88; *Dale,* 204 S.W.3d at 178. "However, the class 'need not be so ascertainable from the definition that every potential member can be identified at the commencement of the action.'" *Craft,* 190 S.W.3d at 387–88 (quoting *In re Tetracycline Cases,* 107 F.R.D. at 728); *see also Dale,* 204 S.W.3d at 178

 A class definition may be indefinite for a number of different reasons. Two such reasons are pertinent to the discussion of this case. First, class membership cannot depend on individual merit determinations. *Vandyne,* 242 S.W.3d at 697; *Davoll,* 194 F.3d at 1146; *Crosby v. Soc. Sec. Admin. of the United States,* 796 F.2d 576, 579–80 (1st Cir.1986). "Class definitions requiring merit determinations are inappropriate in that the members of the class could not be *presently* ascertainable under a class definition relying on merit determinations inasmuch as such determinations could not be made until the case is concluded." *Dale,* 204 S.W.3d at 178 (emphasis in original). Second, class membership must be based on objective, rather than subjective, criteria. *See Oshana,* 225 F.R.D. at 580–81; *Vietnam Veterans,* 63 F.R.D. at 680.

To identify individual class members based on each individual's state of mind would be a "Sisyphean task," requiring "mini-hearings" to determine whether each potential class member had the requisite state of mind to be a member of the class, undermining judicial economy and efficiency. . . .
*Dale,* 204 S.W.3d at 178.

### D. Pennington's proposed class is not properly defined

### 1. The proposed class includes an extremely large number of uninjured members

 Pennington contends that, if Coca–Cola divulged its use of saccharin, she and many other consumers would not have purchased fountain Diet Coke. However, Pennington's proposed class undoubtedly includes an extremely large number of uninjured class members, that is, those who did not care if the Diet Coke they purchased contained saccharin. Many consumers had no choice of the brand of fountain diet cola they purchased at any given location, let alone the particular type of sweetener used in one brand, Diet Coke. Pennington's own expert witness indicated that only twenty percent of those who currently consume fountain Diet Coke would not continue to do so if they knew it contained saccharin. In other words, *eighty percent of the putative class suffered no injury.* Pennington fails to provide an estimate of the number of potential class members. Because of the presumably large number of individuals who purchased fountain Diet Coke in Missouri, her proposed class "could include millions who [were not injured] and thus have no grievance under" section 407.025. *Oshana,* 472 F.3d at 514.

Pennington attempts to address this problem by arguing that this Court should imply irreparable harm to each putative class member. The court of appeals has previously implied such harm in Merchandising Practices Act cases. *See, e.g., State ex rel. Nixon v. Beer Nuts, Ltd.,* 29 S.W.3d 828, 838 (Mo.App. 2000). However, courts typically only make this assumption in

suits for injunctive relief brought by the attorney general,[8] not actions for damages brought by individual consumers. *See Clement v. St. Charles Nissan, Inc.*, 103 S.W.3d 898, 900 and n. 3 (Mo.App.2003); *State ex rel. Webster v. Milbourn*, 759 S.W.2d 862, 864 (Mo.App.1988).

### 2. The proposed class cannot be modified without becoming indefinite

In order to reduce the number of uninjured putative class members, Pennington could attempt to tie the class definition more closely to the alleged injury. Any such modification, however, would make the putative class indefinite. If she specifically limits class membership to those who were allegedly injured by Coca–Cola, the class definition would contain an impermissible merit determination. The circuit court would not be able to determine whether an individual is, or is not, a class member until after the completion of the litigation. Similarly, the class definition cannot be based on an individual's dislike of saccharin. Membership may not depend on an individual's subjective preference. Such a modification would result in innumerable "mini-trials" to determine class membership.

### 3. This case differs from *Craft*

For support, Pennington relies heavily on the court of appeals decision in *Craft*. The plaintiffs in *Craft* filed suit "to recover damages and other relief under the Merchandising Practices Act … on claims arising out of [Philip Morris'] marketing of 'light' cigarettes." 190 S.W.3d at 374. The court of appeals approved the following class:

All residents of Missouri who purchased and consumed Defendants' Marlboro Lights cigarettes in Missouri, at any time between the five years immediately preceding the filing of the Petition in this suit through the date the Court originally certified this suit as a class action (December 31, 2003), but who do not have a claim for personal injury resulting from the purchase or consumption of cigarettes.

*Id.* On the surface, *Craft* looks similar to the case at bar. However, Pennington's reliance on *Craft* is of no avail.

First, the economic injuries suffered in the two cases are substantially different. According to the complaint in *Craft*, the plaintiffs thought they purchased "light" cigarettes, but the cigarettes they received had the characteristics of regular cigarettes. *Id.* at 375. Additionally, the plaintiffs in *Craft* "alleged that they were aggrieved and suffered ascertainable losses because they failed to receive the qualities and economic value of a low tar, low nicotine cigarette." *Id.* That is, all consumers suffered an economic injury that was based on an objective characteristic. Here, however, all purchasers of fountain *Diet Coke* received fountain *Diet Coke*. The alleged injury was based on a subjective preference against saccharin. Pennington does not attempt to quantify any difference in the economic value between saccharin and non-saccharin Diet Coke.

Second, the management difficulties encountered in *Craft* pale in comparison to those that would be encountered here. The total number of class members here is unknown. At a minimum, many more individuals probably drank fountain Diet Coke than smoked "light" cigarettes. Recognizing that individual notice would be impossible, Pennington suggests notice by publication. When it comes time to identify the class members, if they could

---

8. Pursuant to section 407.100, the attorney general may seek and obtain an injunction "[w]henever it appears … that a person has engaged in, is engaging in, or is about to engage in any" conduct declared unlawful by chapter 407.

be identified at all, consumers would have to not only recall the amount of fountain Diet Coke they purchased out of the innumerable fountain beverages they purchased during the past five years, but also that they would not have purchased fountain Diet Coke if they had known it contained saccharin.[9]

### 4. Certification was improper

Because Pennington's proposed class definition cannot be amended without becoming indefinite and given the sizable number of uninjured putative class members, the class definition is impermissibly overbroad. The circuit court abused its discretion when it certified this class action. The Court's conclusion is consistent with the holdings of other courts that have addressed this issue. In *Oshana*, a federal district court confronted a nearly identical claim under Illinois' consumer fraud law. 225 F.R.D. at 578. The class definitions in the two cases are virtually the same. *Id.* There, the federal district court found, and the Seventh Circuit affirmed, that the class was overbroad and unascertainable. *Id.* at 578, 580–81. The Circuit Court for the City of St. Louis, Judge John Riley presiding, denied certification of a similar class definition in *Kaiser–Engel v. PepsiCo, Inc.*, No. 22042–09307–01, 2007 WL 1972027 (June 25, 2007). The Court agrees with Judge Riley's observation:

> the core problem is that if the class here, as it is now proposed is defined in a way that may be ... sufficiently identifiable for not being too subjective, then it necessarily is flawed for being too

overbroad ...; but by the same token, if the class is defined in a way that is not so defectively overbroad, then the class would necessarily depend on the potential class members' subjective state of mind—and hence not be sufficiently identifiable to support certification.

## IV. CONCLUSION

The circuit court abused its discretion when it certified the underlying class action. Accordingly, the preliminary writ of prohibition is made absolute.[10]

All Concur.

---

9. Because of the difficulty in identifying individual class members, Pennington suggests damages be calculated on a class-wide basis and be placed into a common fund. There is no practical way to calculate the damages for individual class members.

10. Although a class action is inappropriate in cases such as this one, the Merchandising

Practices Act permits the attorney general to take action to protect Missouri consumers. They are not without a remedy. *See, e.g.,* section 407.100.

Given the Court's holding on class definition, other issues raised by the parties need not be addressed.