

# Missouri Court of Appeals
### Southern District
### Division Two

MICHAEL YOUNKER, BRAD  )
NECKERMANN, ADAM CHADEK, and  )
AMANDA CHADEK,  )
 )
    Plaintiffs-Appellants,  )
 )
vs.  )    No. SD33179
 )
INVESTMENT REALTY, INC.,  )    Filed February 20, 2015
MICHAEL WOESSNER, LINDA  )
WOESSNER, CURTIS D. BAXTER,  )
SARAH BAXTER, and  )
WILLIAMSBURG APARTMENTS, INC.,  )
 )
    Defendants-Respondents.  )

## APPEAL FROM THE CIRCUIT COURT OF PHELPS COUNTY

Honorable John B. Berkemeyer, Associate Circuit Judge

REVERSED AND REMANDED

    Michael Younker, Brad Neckermann, Adam Chadek, and Amanda Chadek (collectively referred to as "Tenants") appeal from the trial court's judgment denying class certification and granting summary judgment on all claims in their petition in favor of Investment Realty, Inc., Michael Woessner, Linda Woessner, Curtis Baxter, Sarah Baxter, and Williamsburg Apartments, Inc. (collectively referred to as "Property Owners").[1]  Tenants alleged in their petition that

---

[1] Tenants assert in their first point that a landlord-tenant relationship exists between them and all respondents as related to their respective individual lease agreements.  Although Property Owners' Motion for Summary Judgment

1

Property Owners improperly retained a portion of their lease deposits in violation of section 535.300.[2] Property Owners moved for summary judgment asserting that the terms of Tenants' lease agreements, which varied from the security deposit requirements of section 535.300, were controlling and that all lease deposits were handled according to the contractual terms in the lease agreements. The trial court, relying upon the uncontroverted fact of Property Owners' compliance with such contractual terms, granted summary judgment in favor of Property Owners. Because compliance with the security deposit requirements imposed by section 535.300 is mandatory and cannot be contractually varied or altered and genuine issues of material fact exist as to whether Property Owners complied with such statutory requirements, the trial court's judgment is reversed.

## Factual and Procedural Background

The facts, set forth in the light most favorable to Tenants, *see* **Binkley v. Am. Equity Mortgage, Inc.**, 447 S.W.3d 194, 196 (Mo. banc 2014), are as follows:

Tenants each signed a "Lease and Agreement" to lease separate residences in Rolla, Missouri, from Investment Realty.[3] These agreements vary slightly in their exact language and the specific amounts of funds involved, but these differences are irrelevant to the issues involved in this appeal. Relevant to this appeal, Tenants agreed to "keep the premises in as good order, condition, and repair as when . . . first occupied." The agreements also required Tenants to make

asserted the lack of a landlord-tenant relationship as a reason supporting *partial* summary judgment as to some of the respondents, the trial court never decided that issue, but rather granted summary judgment "in Full" in favor of all respondents for other reasons as discussed in this opinion *infra*.

[2] References to section 535.300 are to RSMo 2000.

[3] These agreements each contained a purported waiver of Tenants' rights to be present at an inspection of the respective premises at the conclusion of the lease. The parties discuss the right to be present for such an inspection in their briefs; however, we have not found where the validity of these waivers was raised and challenged in the pleadings and put at issue in this case.

an initial deposit ranging from $275 to $400 (the "lease deposit").[4] The agreements provided

that a portion of the lease deposit ranging from $75 to $95 would be a nonrefundable "common

area maintenance fee." The agreements also authorized Investment Realty to expend the

remaining lease deposit to repair damage done by Tenants or to fulfill any remaining rent

obligations.

Tenants also signed an accompanying "Security Deposit Agreement" that further detailed

how their lease deposits would be utilized. The Security Deposit Agreement stated that there

was a $75 painting charge for each bedroom unit and a $75 initial carpet cleaning charge, with an

additional charge of $25 per room and $10 per heavily stained area. Tenants separately initialed

all of these provisions. The Security Deposit Agreement also specified that there should be no

damage to the property beyond normal wear and tear, but "DIRT IN CARPETING OR

ELSEWHERE, IS NOT NORMAL WEAR AND TEAR." After their tenancies ended, Property

Owners deducted no more than the full common-area maintenance fee, painting fee, and carpet-

cleaning fee from Tenants' lease deposits. Tenants were not charged any other fees, and the

remaining funds from their lease deposits were refunded to them.

Tenants filed a petition against Property Owners alleging that the common-area

maintenance fee, painting fee, and carpet-cleaning fee were amounts that would be "withheld in

every instance" and were retained to remedy "ordinary wear and tear," which is not allowed by

section 535.300. As such, Tenants alleged that Property Owners were in violation of that statute.

Tenants' petition was brought as a class action on their own behalf and on behalf of all others

similarly situated. By separate motion, Tenants sought court certification of that class.

---

[4] The lease agreement refers to this amount as a security deposit. In order to avoid confusion with the section
535.300 statutory definition of a security deposit, we refer to this amount as the "lease deposit."

Property Owners filed a motion seeking "Summary Judgment in Whole," asserting three legal reasons why summary judgment should be granted on all claims in the petition. The first two reasons are essentially the same and assert that Property Owners are entitled to summary judgment even if they did not comply with the terms of section 535.300 because they complied with the terms of the lease agreements and the contractual terms control regardless of any statutory requirements. The third and final reason asserted that Property Owners are entitled to summary judgment because they complied with the requirements of section 535.300 by expending in some manner or refunding *all* deposited funds.

In the alternative, Property Owners moved for partial summary judgment in two respects: (1) in favor of the individual property owners because they were not landlords as that term is used in section 535.300, and Investment Realty, Inc. was an independent contractor, and (2) on all claims outside the statute of limitations.

In its judgment, the trial court denied Tenants' "Motion for Class Certification," granted Property Owners' "Motion for Summary Judgment In Full," never reaching the issues related to the requested partial summary judgments, and made a determination that the applicable statute of limitations, if summary judgment were reversed, would be section 516.130.

## Discussion

Tenants raise three points on appeal. First, Tenants argue that the trial court erred in granting summary judgment because "there is no genuine dispute regarding the material fact that [Property Owners] withheld sums from [Tenants'] security deposits for reasons not allowed by [section] 535.300" . . . "and/or there are genuine issues of material fact as to whether the sums withheld were allowed by [section] 535.300." Second, Tenants argue that the trial court erred in denying class certification because all requirements of Rule 52.08 were met. Third, Tenants assert that the applicable statute of limitations is ten years, in accordance with section 516.110.

4

***Genuine Issues of Material Fact of Property Owners' Compliance with Section 535.300***
***Precluded Summary Judgment in Full***

> In reviewing a trial court's grant of a motion for summary judgment, we employ a *de novo* standard of review. As such, we will not defer to the trial court's decision, but rather, we will use the same standards the trial court should have used in reaching its decision to grant the motion for summary judgment. We view the record in the light most favorable to the party against whom judgment was entered, and we accord that party the benefit of all inferences which may reasonably be drawn from the record. The propriety of summary judgment is purely an issue of law.

***Baca Chiropractic v. Cobb***, 317 S.W.3d 674, 677 (Mo.App. 2010) (internal citations and quotations omitted).

Summary judgment is appropriately granted when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Rule 74.04.[5] "'A material fact in the context of summary judgment is one from which the right to judgment flows.'" ***Cent. Trust & Inv. Co. v. Signalpoint Asset Mgmt., LLC***, 422 S.W.3d 312, 319 (Mo. banc 2014) (quoting ***Goerlitz v. City of Maryville***, 333 S.W.3d 450, 453 (Mo. banc 2011)). A genuine issue exists as to one of the material facts underlying the moving party's right to summary judgment where the record contains competent evidence that demonstrates two plausible, but contradictory, accounts of an essential fact. ***Birdsong v. Christians***, 6 S.W.3d 218, 222 (Mo.App. 1999) (citing ***ITT Commercial Fin. Corp. v. Mid-Am Marine Supply Corp.***, 854 S.W.2d 371, 382 (Mo. banc 1993)). However, "'[t]he key to summary judgment is the undisputed right to a judgment as a matter of law; not simply the absence of a fact question.'" ***Birdsong***, 6 S.W.3d at 223 (quoting ***Southard v. Buccaneer Homes Corp.***, 904 S.W.2d 525, 530 (Mo.App. 1995)). Here, the trial court granted summary judgment in whole without specifying the basis for its decision. Nevertheless, "'the trial court's judgment may be affirmed on any basis

---

[5] Rule references are to Missouri Court Rules (2014).

supported by the record.'" ***Nail v. Husch Blackwell Sanders, LLP***, 436 S.W.3d 556, 561 (Mo.

banc 2014) (quoting ***ITT Commercial Fin. Corp.***, 854 S.W.2d at 387-88).[6]

Tenants contend that a genuine dispute of material fact exists as to whether Property

Owners used the lease deposit for reasons not allowed by section 535.300, which cannot be

waived; therefore summary judgment in favor of Property Owners is inappropriate.[7] We agree.

Section 535.300 provides:

> 1. A landlord may not demand or receive a security deposit in excess of two months' rent.
> 2. Within thirty days after the date of termination of the tenancy, the landlord shall:
>> (1) Return the full amount of the security deposit; or
>> (2) Furnish to the tenant a written itemized list of the damages for which the security deposit or any portion thereof is withheld, along with the balance of the security deposit. The landlord shall have complied with this subsection by mailing such statement and any payment to the last known address of the tenant.

---

[6] We review the summary judgment record as developed in accordance with the requirements of Rule 74.04(c). "'The purpose of Rule 74.04(c) is to provide some assurance that opposing counsel, the trial court, and the appellate court can ascertain the specific basis or bases on which a movant alleges he or she is entitled to summary judgment.'" ***Bilyeu v. Vaill***, 349 S.W.3d 479, 482 (Mo.App. 2011) (quoting ***Siemens Bldg. Tech., Inc. v. St. John's Reg'l Med. Ctr.***, 124 S.W.3d 3, 8 (Mo.App. 2004)). Rule 74.04(c)(1) requires that a "motion for summary judgment shall summarily state the legal basis for the motion."

> If a party seeks to expand the grounds for a summary judgment motion or enlarge the record after the motion and response has been filed, allowing such an expansion is prejudicial. ***Cross v. Drury Inns, Inc.***, 32 S.W.3d 632, 637 (Mo.App.2000). Allowing the movant to raise new factual issues, grounds or arguments within summary judgment proceedings, without offering the other party the opportunity to respond, violates Rule 74.04 and results in prejudice for the opposing party. ***Id.*** If a party fails to comply with Rule 74.04(c) and such failure is prejudicial, then reversal is required. ***Morley v. Henske***, 704 S.W.2d 298 (Mo.App.1986).

***Wallingsford v. City of Maplewood***, 287 S.W.3d 682, 686-87 (Mo. banc 2009). The failure to raise an argument for summary judgment in the trial court in the manner required by Rule 74.04(c)(1) precludes its review on appeal. ***Peterson v. Discover Prop. & Cas. Ins. Co.***, No. WD 76852, 2015 WL 161013, at *11 (Mo.App. W.D. Jan. 13, 2015). Therefore, we confine our review of the trial court's grant of summary judgment here to the bases raised in the summary judgment record before the trial court and now before us.

[7] Tenants initially argue that "[t]here is no genuine dispute of material fact that [Property Owners] withheld sums from [Tenants'] security deposits for reasons not specifically allowed by [section 535.300]." (Emphasis added). Outside consideration of a motion for summary judgment in favor of Tenants, which was not before the trial court and is not before us, the determination of this factual issue is for the finder of fact. In reviewing the trial court's grant of summary judgment in favor of Property Owners that is currently before us, we are concerned with the existence of a genuine issue of material fact as to a proposition necessary to support that judgment.

3. The landlord may withhold from the security deposit *only* such amounts as are reasonably necessary for the following reasons:

(1) To remedy a tenant's default in the payment of rent due to the landlord, pursuant to the rental agreement;

(2) To restore the dwelling unit to its condition at the commencement of the tenancy, ordinary wear and tear excepted; or

(3) To compensate the landlord for actual damages sustained as a result of the tenant's failure to give adequate notice to terminate the tenancy pursuant to law or the rental agreement; provided that the landlord makes reasonable efforts to mitigate damages.

4. The landlord shall give the tenant or his representative reasonable notice in writing at his last known address or in person of the date and time when the landlord will inspect the dwelling unit following the termination of the rental agreement to determine the amount of the security deposit to be withheld, and the inspection shall be held at a reasonable time. The tenant shall have the right to be present at the inspection of the dwelling unit at the time and date scheduled by the landlord.

5. If the landlord wrongfully withholds all or any portion of the security deposit in violation of this section, the tenant shall recover as damages not more than twice the amount wrongfully withheld.

6. Nothing in this section shall be construed to limit the right of the landlord to recover actual damages in excess of the security deposit, or to permit a tenant to apply or deduct any portion of the security deposit at any time in lieu of payment of rent.

7. As used in this section, the term **"security deposit"** means any deposit of money or property, *however denominated*, which is furnished by a tenant to a landlord to secure the performance of any part of the rental agreement, including damages to the dwelling unit. This term does not include any money or property denominated as a deposit for a pet on the premises.

(Emphasis added).

Ordinarily, an analysis of the application of this section should begin with a determination as to whether particular funds paid by a tenant to a landlord meet the subsection 7 statutory definition of a "security deposit." We need not reach that initial issue and make that determination here, however, because Property Owners conceded at oral argument that the manner in which they treated and handled Tenants' lease deposits, irrespective of the express provisions in the lease agreements, met the statutory definition requirements for those lease

7

deposits to be considered a "security deposit" as defined in subsection 535.300.7.[8] Therefore, our analysis here begins with determining whether a genuine issue of material fact exists as to whether the non-refunded portions of Tenants' security deposits were appropriately expended by Property Owners.

Property Owners' Motion for Summary Judgment set forth two legal bases in favor of summary judgment and their proper expenditure of Tenants' security deposits. First, Property Owners assert that "these transactions are not controlled by statute but instead controlled by contract. Parties to a contract are free to relinquish substantial rights, and [Tenants] contractually waived any rights under §535.300 RSMo. by entering into a contract with potentially different terms." In their brief, Property Owners give several examples of rights that they allege may be waived[9] as part of their overarching argument "that statutes can never bar personal choices in most instances."

In contrast, Tenants argue that section 535.300 is a consumer protection statute and waiver would be against public policy. In support of this argument, Tenants liken the security deposit statute to the Missouri statutes relating to merchandising and trade practices which have been described as "paternalistic in nature" such that they cannot be subject to waiver. *See **High Life Sales Co. v. Brown-Forman Corp.***, 823 S.W.2d 493, 498 (Mo. banc 1992) (quoting ***Electrical and Magneto Serv. Co., Inc. v. AMBAC Int'l Corp.***, 941 F.2d 660, 664 (8th Cir.1991)).

---

[8] With this concession, the question is saved for another day as to whether nonrefundable fees paid by a tenant to a landlord in addition to the monthly rental and as seemingly contemplated by the express terms of the lease agreements here, "secure the performance of any part of the rental agreement," as required by subsection 535.300.7 to meet the statutory definition for a "security deposit" and thereby be subject to the security deposit requirements imposed by the other provisions of section 535.300. *See generally* Peggy L. England, *Tenants' Rights Under the Missouri Security Deposit Statute*, St. Louis Univ. L.J. 1035 (1984).

[9] Property Owners allege that the following rights, among others, are subject to waiver: (1) The right to open access to courts; (2) The right to redress in court for damages not yet suffered; (3) The Fifth Amendment right to remain silent; (4) Protections against warrantless search and seizure; (5) The right to a trial by jury; (6) The protections of statutes of limitation; (7) The right to expected venue.

"The primary rule of statutory construction requires the Court to ascertain the intent of the legislature, considering the words in their plain and ordinary meaning." *Union Elec. Co. v. Dir. of Revenue*, 799 S.W.2d 78, 79 (Mo. banc 1990). Section 535.300 "was enacted for the protection of both the landlord and tenant, is conducive to the public good, [] provides the tenant his exclusive remedy for the wrongful withholding of a security deposit[,]" and is to be liberally construed to effect that purpose. *Battis v. Hofmann*, 832 S.W.2d 937, 940 (Mo.App. 1992). Tenants' argument in favor of an intended consumer protection, paternalistic view of section 535.300 is persuasive because section 535.300 only applies to residential tenancies and section 535.300 uses plain and ordinary language that indicates the legislature did not intend for the parties involved in such tenancies to contractually alter the application of its provisions.

Section 535.300 uses the term "dwelling unit" four times to describe the property for which a security deposit is paid and held. Section 535.300; *Prop. Exch. & Sales, Inc. v. King*, 863 S.W.2d 12, 15 (Mo. App. 1993). While this term is not defined in section 535.300, the definition for "dwelling unit" in section 441.500.6 has been held to be instructive. *Prop. Exch. & Sales, Inc.*, 863 S.W. 2d at 15. That section defines a "dwelling unit" as the "premises or part thereof occupied, used, or held out for use and occupancy as a place of abode for human beings, whether occupied or vacant. Section 441.500.6, RSMo Cum.Supp. 2014.[10] The use of this term in section 535.300 indicates that the legislature did not intend for it to apply to non-dwelling units, such as those involved in commercial tenancies. *PDQ Tower Servs., Inc. v. Adams*, 213 S.W.3d 697, 699 (Mo.App. 2007). "'The statute's broad remedial purpose is to lay the groundwork for landlord-tenant relations and to provide a more equal footing for both. The nature of the landlord-tenant relationship requires such accountability.'" *Id.* (quoting *Battis*, 832

---

[10] When *Prop. Exch. & Sales, Inc.* was decided, this definition was numbered as subsection 5. Section 441.500.5, RSMo Cum.Supp. 1992.

S.W.2d at 940). "This type of approach where the legislature protects the tenant from the landlord's interests while preserving the landlord's interests is usually limited to residential tenants." *PDQ Tower Servs., Inc.*, 213 S.W.3d at 699-700. Based upon these observations and that "[c]ommerical tenants usually are on equal footing with landlords," the western district of our court held that section 535.300 was intended by the legislature to apply only to residential tenancies and not to commercial tenancies. *Id.* This limited application of section 535.300 also indicates an intent by the legislature to control a consumer relationship in a manner such that the requirements of the statute designed to protect a tenant's interests cannot be contractually defeated by a landlord who may be in a superior bargaining position and with whom the tenant is not on equal footing. The legislature correspondingly protected the landlord's interests in this type of consumer transaction, however, by exclusively limiting a tenant's recovery for any violation to not more than twice the security deposit amount. *See Prop. Exch. & Sales, Inc.*, 863 S.W. 2d at 14-15 (stating section 535.300 is the exclusive remedy for tenants to recover security deposits); *see also Battis*, 832 S.W.2d at 940-41 (stating section 535.300 limits recovery to not more than twice the security deposit amount).

We now turn to the specific language used in section 535.300 that shows a legislative intent against contractual modification of its requirements. First, the third subsection of section 535.300 provides that the landlord may withhold from the security deposit *only* such amounts as are reasonably necessary to remedy a tenant's default in the payment of rent; to restore the dwelling unit to its condition at the commencement of the tenancy, ordinary wear and tear excepted; and to compensate the landlord for actual damages sustained as a result of the tenant's failure to give adequate notice to terminate the tenancy pursuant to law or the rental agreement.

10

Use of the word "only" implies that the legislature intended to foreclose security deposits being used for any other purposes.

Second, the seventh subsection refers to funds "however denominated." Section 535.300.7. This broad language indicates that the legislature intended to control security deposits regardless of the contractual language used in the lease. The implication is that once funds meet all the definitional components of a "security deposit" as set forth in this subsection, those funds cannot then escape the security deposit requirements set forth in section 535.300.

Finally, other states have security deposit statutes that specifically provide for parties to be able to contract otherwise.[11] The legislature's failure to include such a provision here does not bespeak permission to contract around the statute, but rather supports the legislature's intent not to allow parties to do so.

For these reasons, we hold that the security deposit withholding requirements imposed by subsection 535.300.3 are mandatory and may not be varied or altered by contract between the landlord and tenant.[12] Property Owners' first asserted legal basis in support of summary judgment—that contract terms control over the provisions of section 535.300.3—is not correct and, therefore, does not entitle Property Owners to summary judgment as a matter of law.

Property Owners' second legal basis in support of summary judgment asserts that even if they cannot contract around the requirements of section 535.300.3 or Tenants cannot waive the protections therein, they are entitled to judgment as a matter of law because the statute was not violated. Property Owners argue that section 535.300.3 was not violated for two reasons.

---

[11] *See e.g.*, Idaho Code Ann. § 6-321, Kan. Stat. Ann. § 58-2550(b), Me. Rev. Stat. tit. 14 § 6033(2), Minn. Stat. § 504B.178(b)(1), N.J. Stat. Ann. § 46:8-21.1, Okla. Stat. tit. 41 § 115(B), Or. Rev. Stat. § 90.300(7)(c)(A), 68 Pa. Cons. Stat. § 250.512(a), S.D. Codified Laws § 43-32-24, Tex. Prop. Code Ann. § 92.104, Utah Code Ann. § 57-17-3, Va. Code Ann. § 55-248.15:1, W.Va. Code § 37-6A-2(b)(5), Wyo. Stat. Ann. § 1-21-1208(a), Wisc. Stat. § 704.28.

[12] Because our decision on the narrow issue in this appeal only requires it, our holding is limited only to the provisions of subsection 3 of section 535.300.

11

First, Property Owners contend that because "ordinary wear and tear" was not defined within the statute, the parties may contractually define ordinary wear and tear in any manner they choose in the lease agreements.[13] This argument fails because, although "ordinary wear and tear" was not given a statutory definition within section 535.300, the term has long been used in legal documents in Missouri, *see e.g., Goddin v. Welton*, 34 Mo. 448, 449 (1864), and its plain and ordinary meaning is commonly understood without further definition.

The existence of ordinary wear and tear is a factual determination made on a case-by-case basis. *Monnig v. Easton Amusement Co.*, 27 S.W.2d 495, 497 (Mo.App. 1930). In reviewing this factual determination on appeal, cases from Missouri long before the enactment of section 535.300 used various constructs to describe the common understanding of the ordinary meaning of what "ordinary wear and tear" is and what it is not. *See Hughes v. Vanstone*, 24 Mo.App. 637, 640-41 (1887) (" [a] tenant, unless the contract otherwise provides, 'is merely required to keep the premises in as good repair as he receives them, ordinary wear and tear and accidental injuries excepted. In other words, he is only so bound to so use the premises as not be guilty of voluntary waste. He is not bound to replace an old floor with a new one, or to rebuild a fallen chimney, or to put on a new roof, or to put in new sashes or doors in place of those that are worn out, nor to rebuild or repair premises accidentally destroyed or injured by fire or other cause not resulting from his negligence.' Wood on Land. & Ten., sect. 368. And in the same section it is stated by the author that a tenant is not 'called upon to make lasting or substantial repairs, as, to put on a new roof, or make what are called general repairs.'"); *Thompson v. Cummings*, 39

---

[13] In their initial brief, Tenants characterize Property Owners' position as "[Property Owners] try to reduce 'ordinary wear and tear' to nothing by stating in the lease agreements that plain old dirt, even one crumb of it, is not 'ordinary wear and tear.'" In their responsive brief, Property Owners do not deny this characterization and appear to confirm it by stating, "[t]he contracts specify that dirt in the carpet or elsewhere are not 'normal wear & tear', and carpet cleaning is specifically authorized by the tenant. The contract merely defined that which the Legislature failed to define, and that definition must now control because [Tenants] agreed to it in the contract."

Mo.App. 537, 539 (1890) ("[b]arking and ploughing up young apple trees by cultivating a crop among them certainly ought not to be the ordinary 'wear and tear' of a farm rented for a year"); *Blanchon v. Kellerstrass Distilling Corp.*, 208 S.W. 484, 487 (Mo.App. 1919) ("mere general wear and tear from ordinary use"); *Gralnick v. Magid*, 238 S.W. 132, 134-35 (Mo. 1921) ("[t]hese are the words which are found in the ordinary lease, regarding the ordinary wear and tear of leased premises; that is, such as the necessary painting to preserve the buildings against accidental breaking of glass, papering when necessary, or accidental or natural repairs of floors, doors, stairs, locks, hinges, etc., which need repairing because of the ordinary use and wear of the premises"); *Courtney v. Ocean Accident & Guar. Corp.*, 142 S.W.2d 858, 861 (Mo. 1940) ("Webster's New International Dictionary defines the word ordinary as 'belonging to what is usual; having or taking its place according to customary occurrence or procedure; usual, normal.' The word extraordinary is defined by Webster as 'beyond or out of the common order or rule; not of the usual, customary, or regular kind; not ordinary.'"); *Ten-Six Olive, Inc. v. Curby*, 208 F.2d 117, 122 (8th Cir. 1953) ("The 'good condition' clause provided that the premises should be surrendered in as good condition as received, ordinary wear and tear excepted. It did not provide they should be returned in the same condition, or like condition").

"The legislature is presumed to know the existing law when enacting a new piece of legislation." *Greenbriar Hills Country Club v. Dir. of Revenue*, 47 S.W.3d 346, 352 (Mo. banc 2001). Given the long-standing common understanding as to the ordinary meaning of the phrase "ordinary wear and tear," it did not need any further definition in section 535.300. Moreover, if parties were able to contractually redefine this term contrary to its ordinary meaning, it would frustrate the purpose of the statute and the legislative intent for enacting it, i.e., balancing the

13

interests of landlords and tenants in a residential tenancy, as discussed *infra*.[14] Property Owners, therefore, cannot demonstrate compliance with section 535.300.3 by contractually crafting their own definition of "ordinary wear and tear."

Second, Property Owners argue that they complied with the requirements of section 535.300.3 because they either expended in some manner or returned all of Tenants' security deposits. In support of that argument to the trial court, Property Owners relied on *Battis v. Hofmann* for the assertion that: "[A] cause of action under § 535.300, RSMo. can only lie for funds which are wrongfully withheld and which are neither returned to the tenant nor expended by the landlord." After a thorough reading of *Battis*, we see no basis in it from which to conclude that a landlord may comply with section 535.300 by expending the lease deposit for *any* purpose. Rather, a logical view of section 535.300.3 and its use of the word "only," as discussed *infra*, would yield a plain and ordinary meaning that a landlord may *only* expend funds for the express purposes set forth section 535.300.3.

On appeal, Property Owners re-characterize their *Battis* argument to assert that because carpet cleaning funds were withheld in *Battis*, the *Battis* court implicitly approved either that carpet cleaning was not expended for ordinary wear and tear or that lease terms are enforceable regardless of the terms of the statute. The sole issue presented to the *Battis* court was whether section 535.300 provides a mandatory penalty for retention of a security deposit beyond the thirty-day period prescribed by the statute for its return. *Battis*, 832 S.W.2d at 939. In resolving

---

[14] Since the enactment of section 535.300 in 1983, the Supreme Court of Missouri has addressed the common understanding of the "ordinary meaning" attached to the phrase "ordinary wear and tear" observing:

> "'Ordinary wear and tear' includes any usual deterioration from use of the premises during the lease period[.]" 49 AM.JUR.2D, LANDLORD AND TENANT Section 893. It means "normal depreciation." *Id. See also* BLACK'S LAW DICTIONARY 1593 (6th ed. 1990) ("'Natural wear and tear' means deterioration or depreciation in value by ordinary and reasonable use of the subject matter.").

*Brizendine v. Conrad*, 71 S.W.3d 587, 592 n.4 (Mo. banc 2002).

14

this issue, the **Battis** court did not implicitly approve any other issues that were not presented to it or that were not necessary to the resolution of the issue that was presented to it.

Property Owners were entitled to judgment as a matter of law only if the uncontroverted facts demonstrated that there was no genuine issue of fact as to whether the non-refunded amounts of the Tenants' security deposits were expended by Property Owners for one of the three purposes authorized by section 535.300.3. There are no facts in the summary judgment record supporting that Property Owners expended any part of the security deposits for the first or third authorized purposes under section 535.300.3. While the second purpose in that subsection authorizes Property Owners to expend security deposit funds "[t]o restore the dwelling unit to its condition at the commencement of the tenancy," it also places an "ordinary wear and tear excepted" limitation on that authority. It was, therefore, incumbent upon Property Owners to demonstrate that, based upon the summary judgment record, there is no genuine issue of fact that the non-refunded security deposits were not expended to remedy "ordinary wear and tear." They have failed to do so, primarily because they were focused upon demonstrating there was no genuine issue of fact that their expenditures were in accordance with the terms of the lease agreements.[15] As discussed *infra*, the provisions in the lease agreements were immaterial as to whether Property Owners were entitled to summary judgment as a matter of law because their expenditure of Tenants' security deposits were in accordance with the requirements of section 535.300.3. Tenants' first point is granted, and the trial court's judgment granting Property Owners' motion for summary judgment in full is reversed.

---

[15] As noted, *infra*, "ordinary wear and tear" is a fact determination. **Monnig**, 27 S.W.2d at 497. In the absence of a direct admission or stipulation as to its non-existence by Tenants, it is an inference drawn from the totality of the circumstances in this case. Where the facts, even if uncontroverted, support an inference either way, summary judgment would be inappropriate. **Baca Chiropractic**, 317 S.W.3d at 677 (non-moving party given the benefit of all inferences which may reasonably be drawn from the record).

15

*Authority to Review Class Certification Denial is not Restricted to Supreme Court*

In what Tenants characterize as an "excess of caution," they sought to appeal the trial court's denial of class certification in its judgment under section 512.020(3) and Rule 52.08(f) authorizing a permissive interlocutory appeal from an order granting or denying class-action certification[16] and also under section 512.020(5) allowing an appeal as a matter of right from a final judgment.[17] Permitting a section 512.020(3) and Rule 52.08(f) interlocutory appeal, however, is within the discretion of this Court. Section 512.020.3(a); Rule 52.08(f); *State ex rel. Coca-Cola Co. v. Nixon*, 249 S.W.3d 855, 859 (Mo. banc 2008). Rule 52.08(f) directs that the method by which to obtain that permission is governed by Rule 84.035. In accordance with Rule 84.035, Tenants filed a petition for permission to appeal the denial of class certification. *See* Rule 84.035(a) and (b). Property Owners filed a response to that petition as allowed by Rule 84.035(c). By this court's order exercising its section 512.020(3)(a) and Rule 52.08(f) discretion, Tenants' petition for permission to appeal was denied.

---

[16] "The statute and the rule authorize a new interlocutory appeal regarding class certification[.]" *State ex rel. Coca-Cola Co. v. Nixon*, 249 S.W.3d 855, 859 (Mo. banc 2008). They "do not permit an appeal of certification orders as of right; they merely create the potential for an appeal." *Id.*

[17] As pertinent here, section 512.020 provides:

> Any party to a suit aggrieved by any judgment of any trial court in any civil cause from which an appeal is not prohibited by the constitution, nor clearly limited in special statutory proceedings, may take his or her appeal to a court having appellate jurisdiction from any:
>
> ****
>
> (3) Order granting or denying class action certification provided that:
> (a) The court of appeals, in its discretion, permits such an appeal; and
> (b) An appeal of such an order shall not stay proceedings in the court unless the judge or the court of appeals so orders;
>
> ****
>
> (5) Final judgment in the case or from any special order after final judgment in the cause; but a failure to appeal from any action or decision of the court before final judgment shall not prejudice the right of the party so failing to have the action of the trial court reviewed on an appeal taken from the final judgment in the case.

Rule 52.08(f), in pertinent part, provides: "**Appeals**. An appellate court may permit an appeal from an order of a circuit court granting or denying class action certification under this Rule 52.08 if a petition is timely filed as provided in Rule 84.035."

In this section 512.020(5) appeal of the trial court's final judgment that included the order denying Tenants' motion for class certification, Property Owners contend that because Tenants' Rule 84.035(a) petition for permission to appeal that denial of class certification as provided by section 512.020(3) and Rule 52.08(f) was denied by this court, further review of class certification is restricted to a petition for original remedial writ filed with the Supreme Court as required by Rule 84.035(j)[18] and may not be addressed by this court in this appeal. This is because, Property Owners assert, without citation to any relevant legal authority, "[t]he price for allowing *permissive* interlocutory appeals [i]s giving up an appeal as a matter of *right* at the conclusion of the case." Property Owners misconstrue the scope of Rule 84.035.

"'The right to appeal is purely statutory and, where a statute does not give a right to appeal, no right exists.'" *Coca-Cola Co.*, 249 S.W.3d at 859 (quoting *Riverside–Quindaro Bend Levee Dist. v. Intercont'l Eng'g Mfg.*, 121 S.W.3d 531, 532 (Mo. banc 2003), and citing Rule 81.01). The scope of Rule 84.035 must be read in context with the statutory authorization for a permissive interlocutory appeal in section 512.020(3), as implemented by Rule 52.08, of an interlocutory trial court order granting or denying class certification. Rule 52.08(c)(1) requires that "[a]s soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." Such an order is interlocutory until a decision is made on the merits of the case. *See* Rule 52.08(c)(1) ("An order under this Rule 52.08(c)(1) may be conditional and may be altered or amended before the decision on the merits."). Section 512.020(3) and Rule 52.08(f) function to create the potential for an interlocutory appeal from an interlocutory order granting or denying class certification. *Coca-Cola Co.*, 249 S.W.3d at 859. Nothing in either indicates that they function to impinge upon or

[18] Rule 84.035(j) provides: "If the petition to appeal is denied, further review, if any, of the trial court's order granting or denying class action certification shall be by petition for original remedial writ filed directly in this Court."

17

foreclose any other statutorily granted right to appeal. In that context, the purpose of Rule 84.035 is to set forth the procedural manner in which a section 512.020(3) and Rule 52.08(f) interlocutory appeal is to be taken. Rule 84.035, therefore, does not impinge upon or foreclose any other statutorily created avenues of review, such as an appeal as a matter of right of a final judgment created by section 512.020(5). We conclude that Rule 84.035(j) only applies to the procedure for seeking review of an interlocutory order granting or denying class certification and has no application in the context of an appeal of a final judgment as a matter of right as granted by section 512.020(5).

In their briefs, Tenants and Property Owners address and discuss the relative merits of class certification and whether the class as proposed by Tenants meets the requirements under Rule 52.08. The trial court's denial of class certification in this case, however, was not a reflection of the trial court's decision on the merits of class certification. Rather, the trial court's decision not to certify a class appears to flow from its recognition that if summary judgment was properly granted in favor of Property Owners, then no wrong can exist for which a class should be certified. Because we reverse the summary judgment decision for the reasons stated above, the denial of class certification erroneously premised upon that grant of summary judgment must also be reversed and the case remanded to the trial court for a Rule 52.08 merits-based decision on class certification in light of the mandatory requirements of section 535.300.3.

### *Ruling on Statute of Limitations Remains Interlocutory*

Because we reverse summary judgment for the reasons discussed above, it would be premature for us to consider the applicable statute of limitations. Upon remand to the trial court, there will no longer be a final judgment in the case. Because any order or judgment entered by a trial court before a judgment becomes final and appealable is interlocutory, *State ex rel. Schweitzer v. Greene*, 438 S.W.2d 229, 232 (Mo. banc 1969), the trial court "may open, amend,

18

reverse or vacate" the order, *Around the World Importing, Inc. v. Mercantile Trust Co.*, 795

S.W.2d 85, 88 (Mo.App. 1990). As our Supreme Court stated in *Schweitzer*:

> Logic and justice would seem to indicate that a trial court should be permitted to retain control of every phase of a case so that it may correct errors, or, in its discretion, modify or set aside orders or judgments until its jurisdiction is extinguished by the judgment becoming final and appealable. Of course, any such action should be taken only after proper notice to the parties.

438 S.W.2d at 232. Because the trial court has authority upon remand to reconsider its ruling on

the applicable statute of limitations, any opinion issued by this court on that matter would be

advisory, and we "cannot and do not render advisory opinions." *In re Estate of Van Cleave*, 574

S.W.2d 375, 376 (Mo. banc 1978).

### Decision

The trial court's judgment is reversed in all respects, and the case is remanded for further

proceedings consistent with this opinion.


GARY W. LYNCH, J. – Opinion author

NANCY STEFFEN RAHMEYER, J. – concurs

DON E. BURRELL, J. – concurs

19